# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IpLEARN, LLC,<br><br>    **Plaintiff,**<br> v.<br><br>WBT SYSTEMS, LTD., *et al.*,<br><br>    **Defendants.** | Civil Action No. 11-825-LPS |

## IpLEARN, LLC'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT THE ULTIMATE SOFTWARE GROUP, INC.'S MOTION TO SEVER

Of Counsel:

Marc A. Fenster
Russ, August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025-1031
(310) 826-7474 (phone)
(310) 826-6991 (fax)
mfenster@raklaw.com

January 13, 2012

Arthur G. (Chip) Connolly, III (#2667)
Kristen Healey Cramer (#4512)
Jeremy D. Anderson (#4515)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE  19801
(302) 302-888-6318 (phone)
(302) 255-4318 (fax)
aconnollyIII@cblh.com
kcramer@cblh.com
janderson@cblh.com

Attorneys for Plaintiff,
IpLearn, LLC

# TABLE OF CONTENTS

I. Introduction ................................................................................................................1

II. Background ................................................................................................................2

III. Legal Standard ...........................................................................................................3

IV. Because the patents, accused technologies, and at least some of the defendants are related, IpLearn properly joined Ultimate in this action ........................................4

    A. IpLearn's claims arise out of the same transactions or occurrences ........................4

    B. Common questions of law and fact pervade this action .........................................7

    C. Joinder in this action does not unduly prejudice Ultimate ....................................10

    D. Joinder is the most efficient and fair procedure for resolving the parties' disputes ..................................................................................................................11

    E. The America Invents Act does not apply ..............................................................11

V. Even assuming Ultimate was improperly joined, neither dismissal nor a stay is justified ....................................................................................................................12

VI. Conclusion ...............................................................................................................13

# **TABLE OF AUTHORITIES**

**CASES**

*Alford Safety Servs., Inc. v. Hot-Hed, Inc.*,
    C.A. No. 10-1319, 2010 U.S. Dist. LEXIS 98152 (E.D. La. 2010) ...............................12

*Androphy v. Smith & Nephew, Inc.*,
    31 F. Supp. 2d 620 (N.D. Ill. 1998) ..............................................................................12

*Boretsky v. Governor of N.J.*,
    433 Fed. Appx. 73 (3d Cir. N.J. 2011) .........................................................................4, 6

*Boston Sci. Corp. v. Cordis Corp.*,
    777 F. Supp. 2d 783 (D. Del. 2011) ..............................................................................13

*Dougherty v. Mieczkowski*,
    661 F. Supp. 267 (D. Del. 1987) ....................................................................................9

*Eastman Chem. Co. v. Alphapet Inc.*,
    Civ. No. 09-971-LPS, Mem. Order (D. Del. Dec. 29, 2011) .........................................8

*Embrex, Inc. v. Serv. Eng'g Corp.*,
    216 F.3d 1343 (Fed. Cir. 2000) .....................................................................................8

*eSpeed, Inc. v. BrokerTec USA, L.L.C.*,
    2004 U.S. Dist. LEXIS 13486 (D. Del. June 15, 2004) ............................................4, 5, 6

*Hagan v. Rogers*,
    570 F.3d 146 (3d Cir. N.J. 2009) ..............................................................................4, 6, 7

*Helicos Bioscience Corp. v. Pacific Biosciences of Cal.*,
    Civ. No. 10-735-SLR, 2011 U.S. Dist. LEXIS 148009
    (D. Del. Dec. 22, 2011) ..................................................................................6, 7, 8, 10, 12

*Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch*,
    564 F. Supp. 1358 (D. Del. 1983) ..................................................................................7

*Philips Elecs. N, Am. Corp. v. Contec Corp.*,
    220 F.R.D. 415 (D. Del. 2004) ...................................................................................7, 12

*SoftView LLC v. Apple Inc.*,
    C.A. No. 10-389-LPS, 2011 U.S. Dist. LEXIS 140540 (D. Del. Dec. 7, 2011) ............12

*Sprint Communs. Co., L.P. v. Theglobe.com*,
    233 F.R.D. 615 (D. Kan. 2006) ....................................................................................11

*SRI International, Inc. v. Internet Security Systems, Inc.*,
    Civ. No. 04-1199-SLR, 2005 U.S. Dist. LEXIS 6797
    (D. Del. Apr. 13, 2005) ..........................................................................6, 7, 8, 10, 11, 12

*TecSec, Inc. v. Int'l Business Machines Corp.*,
    C.A. No. 10-115-LMB (D.I. 103-4) .................................................................................13

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966) ............................................................................................................6

*Wacoh Co. v. Kionix Inc.*,
    No. 10-617-RGA, Mem. Op. at 4 (D. Del. Jan. 9. 2012) ............................................ 11-12

## **STATUTES**

Fed. R. Civ. P. 20(a) .........................................................................................................................4

35 U.S.C. § 299(e) ........................................................................................................................11

I.      **Introduction.**

Ultimate is properly joined as a defendant in this action. IpLearn asserts three patents against Ultimate, and those same three patents against at least five other defendants, and between one or two of those same patents against all of the other defendants with one exception. All of the patents in this action are related by at least patent family or subject matter. Ultimate does not argue otherwise. But the overlap between Ultimate and its co-defendants extends beyond the fact that they are accused of infringing the same or related patents. Ultimate and several others also perform claim elements in a similar manner, including the identification of job positions based on employee attributes, the identification of steps that must be taken for specific job positions, and providing materials through a network. And, even without the benefit of discovery, Ultimate and several other defendants appear to be related, "working" together and acting as "partner[s]" with accused products that are "compatible" and "complimentary." Under these circumstances, the issues faced by the parties naturally give rise to substantial common questions of fact and law, including issues of claim construction, validity and enforceability, and damages. And in light of the identity of issues, proceeding separately against Ultimate unreasonably multiplies proceedings and the burden on the parties' and Court's resources.

Ultimate would have the Court disregard the commonalities between it and its co-defendants by arguing that IpLearn has created a "monumental mess" by threatening "33,700+" combinations of infringement. But Ultimate goes too far (not to mention providing no basis for its "33,700+" number). Ultimate's position is unrealistic. IpLearn has no intention of pursuing each claim of each patent, and will identify its asserted claims at the appropriate time. Ultimate's other arguments in favor of severance have no stronger footing in reality. As a result, and as discussed further below, IpLearn respectfully requests that the Court deny Ultimate's motion.

1

**II.     Background.**

IpLearn accuses a total of 16 defendants (two of which are simply the U.S. and foreign arms of the same company) of infringing patents directed to computer-aided learning systems and methods.  Notwithstanding the number of defendants and patents, significant overlapping legal and factual issues, as well as concerns for efficiency, justify the joinder of the defendants in the present action.  The basis for much of the commonalities between the defendants is captured in the chart below, which demonstrates that the three patents asserted against Ultimate are also asserted against defendants Beeline, Halogen, Kenexa, Mzinga, and Oracle.  Ultimate also shares between one to two common patents with each of the remaining defendants, with the exception of defendant Pearson.  And those patents in common with the other defendants are related in, among other things, substance, technology, family, claim language, specifications, prior art, prosecution, and conception.

| Defendants | Asserted Patents | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 478 | 780 | 973 | 888 | 486 | 556 | RE38432 | RE39942 | 448 |
| Beeline | | x | | | | x | | | x |
| Cengage | | | | x | x | x | | | |
| Connections | | | | x | x | x | | | |
| Element K | | | | x | x | x | x | | |
| Halogen | | x | | | | x | | | x |
| Kenexa | | x | | | | x | | | x |
| Lawson | | | | | | x | | | |
| Meta4 | | x | | | | x | | | x |
| Mzinga | | x | | | | x | x | | x |
| Operitel | | | | x | x | x | | | |
| Oracle | x | x | x | x | x | x | x | x | x |
| Pearson | | | | x | x | | | | |
| Lumesse (Inc. & AS) | | x | | | | | | | x |
| Technomedia | | x | | | | | | | x |
| Trivantis | | | | x | x | x | | | |
| Ultimate | | x | | | | x | | | x |

Highlighting denotes parties with patents in common with Ultimate

Ultimate and several of its co-defendants also infringe fundamental elements of the asserted patents in a similar manner, as detailed in the attached exemplary claim charts at Exhibits I-K.  Ultimate and several co-defendants, for instance, meet the limitation of claim 46 of the U.S. Patent No. 6,213,780 ("the '780 patent") of "identifying a candidate for a … job position, based on [a] retrieved attribute," by identifying key positions based on an

understanding of employee competencies or profiles. (Ex. J.)[1] Likewise, Ultimate and several co-defendants meet the limitation of claim 1 of U.S. Patent No. 6,126,448 ("the '448 patent") of "retrieving, by a computer, a job position, which identifies the one or more jobs needed to be done for the job position," by, for example, identifying open and key positions, and providing development plans, training courses, learning objectives, and the like as prerequisites to the job positions. (Ex. I.) And Ultimate and several of its co-defendants meet the limitation of claim 28 of U.S. Patent No. 6,398,556 ("the '556 patent") of accessing materials "by at least one of the users from another computer, which is connected to the apparatus through a network," by making their accused systems available on-line and accessible from any location. (Ex. K.)

Moreover, although this action is in its early stages, the defendants do not appear wholly unrelated as argued by Ultimate. IpLearn's own investigation, without the benefit of discovery from the defendants, indicates that Ultimate and defendant Halogen are "partner[s]," and that their accused products are "compatible" and "complimentary." (Exs. E-G.) Public documents also indicate that Halogen is related to, and, in fact, "already working" with not only Ultimate, but also defendants Oracle and Lawson. (Ex. C-5.)

And the disputed issues between the parties significantly overlap. Among other things, the claims between many of the parties involve identical patents, overlapping invalidity, unenforceability and equitable defenses, require claim construction of identical claims in light of similar intrinsic and extrinsic records, implicate much of the same prior art references, raise similar discovery issues and disputes, and require testimony from witnesses who are relevant to each of the defendants.

**III.    Legal Standard.**

Rule 20 permits several defendants to be joined in an action if (1) the claims against the defendants, arise from the same transaction, occurrence, or series of transactions or occurrences, and (2) a question of law or fact common to all plaintiffs or all defendants will arise in the action.

---

[1] All exhibits are attached to the Declaration of Fredricka Ung, filed concurrently herewith.

*See* Fed. R. Civ. P. 20(a). In exercising their broad discretion to join parties, courts must consider the "specific fact pattern presented by the plaintiffs and claims before the court." *Boretsky v. Governor of N.J.*, 433 Fed. Appx. 73, 77 (3d Cir. 2011).

In addition, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. N.J. 2009); *see also eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 2004 U.S. Dist. LEXIS 13486, 11-12 (D. Del. June 15, 2004) ("liberal requirements" of Rule 20 "permit 'all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.'").

**IV. Because the Patents, Accused Technologies, and at Least Some of the Defendants are Related, IpLearn Properly Joined Ultimate in this Action**.

    A.    <u>IpLearn's claims arise out of the same transactions or occurrences</u>.

IpLearn's claims against the defendants arise out of the same transactions or occurrences. For instance, the three patents asserted against Ultimate are also asserted against defendants Beeline, Halogen, Kenexa, Mzinga, and Oracle. (D.I. 15, Counts II, VI, IX.) Ultimate also shares between one to two common patents with each of the remaining defendants, with the exception of defendant Pearson. *Id.* And all of the patents are related – substantively, by patent family, or both. The three patents asserted against Ultimate are from the same patent family, while the other patents-in-suit fall in either of two other patent families (and hence, the specifications and claims of the patents overlap). Moreover, although Ultimate attempts to depict a "monumental mess," (D.I. 103 at 9), it concedes, as it must, that all of the patents are "directed generally to web and computer-based learning …." (D.I. 103 at 3.) Indeed, all of the patents name Messrs. Ho and Tong as inventors, all were prosecuted before the United States Patent and Trademark Office ("PTO") by the same patent prosecutor, nearly all were examined by the same primary PTO examiner, each cites to much of the same prior art, and the PTO classified all in the same primary technology class (Class 434, Education and Demonstration) and many by the same subclass (Subclass 219, Occupation).

Commonalities also exist between the accused technologies. For example, although discovery has not commenced and preliminary infringement contentions are not yet due, Ultimate infringes several fundamental claim elements in the same manner as other defendants. In particular, Ultimate and defendants Beeline, Halogen, and Kenexa each identify key positions based on an understanding of employee competencies or profiles (Ex. J), identify open and key positions, and provide development plans, training courses, learning objectives, and the like as prerequisites to the positions (Ex. I), and make their accused systems available on-line and accessible from any location, (Ex. K). The commonalities between the accused technologies should come as no surprise to Ultimate – it admits that "many of the defendants are business competitors in the same or overlapping markets …." (D.I. 103 at 3.)

In fact, Ultimate's claim that the defendants are "unrelated" is suspect.[2] Ultimate submits no evidence to support its claim. It relies solely on attorney argument. But even without discovery, documents in the public record suggest the contrary. A Halogen press release indicates that Halogen (and specifically a component of Halogen's accused product) is a "product solution partner" to Ultimate's accused product. (Ex. E.) And case studies published by Halogen indicate that at least a component of its accused product is "compatib[le]" with and a "complimentary solution to" Ultimate's accused product, and that Ultimate personnel recommends Halogen's systems to its clients. (Exs. F & G.) Halogen's website also indicates that it is "already working" not only with Ultimate, but also defendants Oracle and Lawson. (Ex. C-5.) Thus, even assuming no relationship between the patents and accused technologies, the fact that Ultimate, Halogen, Oracle and Lawson have some relationship satisfies the same transaction or occurrence prong of Rule 20. *See eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 2004 U.S. Dist. LEXIS 13486, *10 n.9 (D. Del. June 15, 2004).

---

[2] Ultimate is also wrong that there are "17" purported "unrelated defendants." *Id.* at 1. Currently, there are 16 defendants, two of which are essentially the same albeit one based in the U.S. (Lumesse, Inc.) and the other in the U.K. (Lumesse AS).

5

Moreover, Ultimate's interpretation of Rule 20 as imposing a *per se* prohibition on joinder if the joined defendants are unrelated – "even if [the] defendants manufacture or sell similar products" – is incorrect. (D.I. 103 at 7.) Neither the Third Circuit nor recent decisions from this Court adopt such a rule. Indeed, the presumption is in favor of, not against, joinder: "'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan*, 570 F.3d at 153 (*citing United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)); *see also eSpeed, Inc.*, 2004 U.S. Dist. LEXIS 13486, *11-*12 ("liberal requirements" of Rule 20 "permit 'all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.'"). And the Third Circuit has cautioned that a court's broad discretion to permit joinder under Rule 20 must be "based on the specific fact pattern presented by the plaintiffs and claims before the court," and not on "general assumptions." *Hagan*, 570 F.3d at 157; *see also Boretsky*, 433 Fed. Appx. at 77 (same).

Consistent with that guidance, recent decisions from this Court have rejected the *per se* rule Ultimate proposes, that infringement by separate accused products are necessarily separate transactions and occurrences. Less than a month ago, defendant Life Technologies in *Helicos Bioscience Corp. v. Pacific Biosciences of Cal.*, Civ. No. 10-735-SLR, 2011 U.S. Dist. LEXIS 148009 (D. Del. Dec. 22, 2011), moved to sever on the grounds that its co-defendants were direct competitors offering different accused products. *Id.* at *4, *8 n.4. This Court denied the motion, holding that there were common transactions and occurrences because "of … commonalities in the accused technologies … as well as the overlap in the asserted patents." *Id.* at *9. Likewise, in *SRI International, Inc. v. Internet Security Systems, Inc.*, Civ. No. 04-1199-SLR, 2005 U.S. Dist. LEXIS 6797 (D. Del. Apr. 13, 2005), the defendants developed and sold separate and distinct accused products and moved to sever. *Id.* at *2-*4. This Court again declined to sever, holding that there were common transactions and occurrences because there were infringement claims against both defendants under two common patents and the accused products involved the same technology, computer network protection systems. *Id.* at *11-*12.

6

Under the reasoning of *Helicos* and *SRI International*, the claims against Ultimate and its co-defendants satisfy the "same transaction or occurrence" requirement.

Neither of the two District of Delaware cases Ultimate cites in support of its position dictates a different result. The earlier of the two, *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch*, 564 F. Supp. 1358 (D. Del. 1983), is distinguishable based on its procedural posture. There, Merrill Lynch, the patentee and declaratory judgment defendant, filed a complaint for infringement against a third party and attempted to circumvent Rule 14 by shoe-horning its third party complaint into Rule 13(h), which allows adding parties to a counterclaim or crossclaim consistent with Rules 19 and 20. *Id.* at 1370. The second, *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415 (D. Del. 2004), candidly does support Ultimate's position; however, that case was one month from trial and the moving defendant would have been prejudiced by having to try a case with a co-defendant that was defunct and unable to mount its own defense. *Id.* at 416 & n.1, 418. Severing the defendants for trial under Rule 21 might have been appropriate, independent of the court's analysis of the "same transaction or occurrence" issue. In any event, no Third Circuit precedent supports Ultimate's *pro se* rule, which runs counter to the Court's admonition against "general assumptions." *Hagan*, 570 F.3d at 157.

    B. <u>Common questions of law and fact pervade this action.</u>

The issues in this action give rise to common questions of law and fact. As discussed above, and conceded by Ultimate, all of the patents are related, and in multiple ways – whether by subject matter, specification, claims, family, inventors, prosecutors, examiners, classification, or prior art. And, also as discussed above, even at this early stage of the action, at least some of the accused technology share fundamental elements, or are even compatible with or compliment each other. Under similar circumstances, this Court has concluded that common questions of fact and law exist in support of joinder. *SRI Int'l, Inc.*, 2005 U.S. Dist. LEXIS 6797, at *11 ("It is the experience of this court that patents over the same technology often give rise to the same questions of law and fact (e.g., same prior art references, same level of ordinary skill in the

7

art.)"); *Helicos Bioscience Corp.*, Civ. No. 10-735-SLR, 2011 U.S. Dist. LEXIS 148009, *9 n.6 (same); *see also Eastman Chem. Co. v. Alphapet Inc.*, Civ. No. 09-971-LPS, Mem. Order at (D. Del. Dec. 29, 2011) (finding "numerous common questions of law and fact" in context of consolidation motion based on related patents covering similar technology, and PTO classification, and sharing the same specification and similar claimed processes). The same result is warranted here.

Ultimate's contention that "nearly every issue … will be different," (D.I. 103 at 7), is overstated and largely inaccurate. For instance, with regards to proof of infringement (the first purported difference that Ultimate alleges), Ultimate again points to no evidence to support its contention. In fact, it admits that it is speculating, stating that its claim is based on purported "reasonable <u>assumptions</u> … of other defendants' accused products …." *Id.* at 7-8 (emphasis added). It also contradicts itself by admitting that, at the least, "the accused products all are likely to have a computer software component …." *Id.* at 4. And as discussed above, fundamental elements of the patents are infringed in the same manner by several of Ultimate's co-defendants.

Ultimate's contention that "claim construction issues are sure to differ" is also unconvincing. *Id.* at 7. Fundamental claim construction principles dictate that:

> A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, <u>not in light of the accused device</u>. Contrary to what MEI's counsel wrote the district court, claims are not construed "to cover" or "not to cover" the accused device. That procedure would make infringement a matter of judicial whim. It is only after the claims have been construed without reference to the accused device that the claims, as so construed, are applied to the accused device to determine infringement.

*SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (emphasis added); *see also Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) ("claims are construed <u>independent of the accused product</u>" (emphasis added)). Ultimate's argument that differences in the accused products "will certainly provoke differences concerning ... slants in the claim language that really matter" is an invitation to error. D.I. 103 at 8. And Ultimate

8

overlooks the common claim construction issues inherent with related patents covering the same technology, overlapping relevant time periods for considering the ordinary skill in the art, shared specifications, overlapping prior art, the same inventors, prosecutor, and examiner, and identical claim language[3].

In a one-clause statement, Ultimate also argues that "damages and discovery issues will unquestionably be unique." D.I. 103 at 9. But again, even aside from the lack of proof, Ultimate overstates the differences. For instance, looking only at the fifteen *Georgia-Pacific* factors, several are directed to IpLearn, while others are not necessarily tied to either party (*e.g.*, licenses to the patents-in-suit; the nature and scope of the license; IpLearn's patent policies; convoyed sales; duration of the patent; success of the patented product; advantages of the patent over other devices; nature of the patented invention; customary terms; and opinion of experts). Likewise, discovery issues will overlap. IpLearn will certainly produce the patents to each of the defendants, along with relevant prosecution documents, licenses, and corporate information. IpLearn's relevant corporate witnesses, the named inventors, prosecuting attorney, and prior art witnesses are also likely to overlap. And, given the relationship between at least some of the defendants, IpLearn will certainly seek discovery into the scope of their interactions with respect to activities relevant to the patents.[4]

Moreover, Ultimate ignores a host of other issues that raise common questions of law and fact. These include at least issues of: (i) inventorship; (ii) the conception and reduction to practice of the patented inventions; (iii) the priority date to which each asserted claim is entitled;

---

[3] The first independent claims of the patents asserted against Ultimate, for instance, share at least one or more of the following claim terms: first computer; job position; jobs; user; materials; learning materials; and retrieving by [a/the] computer. (D.I. 1-1, Ex. 2 (U.S. Patent No. 6,213,780, claim 1); D.I. 1-2, Ex. 9 (U.S. Patent No. 6,126,448, claim 1); *Id.*, Ex. 6 (U.S. Patent No. 6,398,556, claim 2).)

[4] Ultimate's reliance on the fact that IpLearn asserts additional patents against some of the other defendants does not support severance. "By its terms, Rule 20(a) only requires a single basis for commonality, in either law or fact, for the joinder to be acceptable." *See, e.g., Dougherty v. Mieczkowski*, 661 F. Supp. 267, 278 (D. Del. 1987).

(iv) the prior art; (v) the definition of ordinary skill in the art. *See SRI Int'l, Inc.*, 2005 U.S. Dist. LEXIS 6797, at *11 ("e.g., same prior art references, same level of ordinary skill in the art").

        C.        <u>Joinder in this action does not unduly prejudice Ultimate.</u>

Ultimate's claims of prejudice range from being unsupported to speculative and, hence, should not preclude joinder. The basic thrust of Ultimate's claims of prejudice stem from the number of asserted patents (9) and the number of claims in those patents. But when Ultimate complains of the number of claims in the patents, it is pointing to the total number of claims under the assumption that IpLearn would or could assert each and every claim in the patents. Ultimate's position is simply unrealistic. IpLearn has no intention of asserting all of the claims in the patents and no rule requires it to identify the asserted claims at this stage of the action. *Cf.* Ex. H at ¶ 4.c. (requiring identification of the asserted claims 90 days after the Rule 16 conference). And Ultimate attempt to suggest a "monumental mess" is due to its own misreading of the record. For instance, there appears to be no basis for Ultimate's claim that there are "33,700+ combinations of alleged infringement that may result." (D.I. 103 at 9.) Likewise, Ultimate's claim that the "'556 patent [has] 84 claims asserted against 13 defendants" is incorrect both in the number of claims in the patent and the number of accused defendants.

Moreover, Ultimate's concerns about the ability to present its case is a concern in any case involving multiple plaintiffs or defendants. Indeed, this Court has previously recognized that if it were required to consider all defendants separately, "the court would never hear a patent case involving more than one defendant – a result the court's limited judicial resources can not permit." *Helicos Bioscience Corp.*, 2011 U.S. Dist. LEXIS 148009, at *8 n.4.[5]

---

[5] Although IpLearn does not believe any severance is required, it does not object to severing Ultimate from the other defendants for purposes of trial – a position IpLearn has previously made known to Ultimate.

D.  Joinder is the most efficient and fair procedure for resolving the parties' disputes.

Severance is also inappropriate because it will increase the costs to the parties and the Court, and delay IpLearn's right to relief. As Ultimate would have it, this Court (and potentially multiple juries for some activities) would be required to hold multiple claim construction proceedings, potentially address discovery and dispositive issues that are in common between the parties, review potentially the same invalidity and unenforceability defenses, as well as any number of prior art references relating to such defenses, and hear testimony from witnesses who are relevant to each of the defendants, among other overlapping issues. Indeed, Ultimate makes no representation that it would agree to be bound to the Court's claim construction and invalidity rulings in this case if it is dropped or severed from this action. And that is so even though it does not, and cannot, deny such duplicity. It would be a waste of resources for this Court to address all of these issues twice, or even more if others move to sever. *See SRI Int'l, Inc.*, 2005 U.S. Dist. LEXIS 6797, at *11-*12 (holding multiple claim construction hearing and determining defendants' invalidity defenses separately "would be an inefficient use of judicial resources.").

E.  The America Invents Act does not apply.

Ultimate's reliance on the recently enacted America Invents Act is misplaced. As evident from the discussion above, the defendants are not joined solely on the basis of having infringed the same patents. But even if that were not the case, the Act expressly states that the new provision applies only to "civil actions commenced on or after the date of the enactment of [the] Act." 35 U.S.C. § 299(e). This action, however, was filed before the Act's enactment, and Ultimate's attempt to retroactively apply the Act is unsupportable. *See SoftView LLC v. Apple Inc.*, C.A. No. 10-389-LPS, 2011 U.S. Dist. LEXIS 140540, *5-*6 (D. Del. Dec. 7, 2011) (rejecting application of AIA to case filed before enactment).

Moreover, Ultimate's attempt to suggest that the Act codifies the law in every jurisdiction – including this Court – except for the Eastern District of Texas is incorrect. For instance, although Ultimate cites other cases from outside of this District to support its position, those cases simply reflect one side of the pre-Act judicial divide on joinder. *See Wacoh Co. v. Kionix*

*Inc.*, No. 10-617-RGA, Mem. Op. at 4 (D. Del. Jan. 9. 2012) (acknowledging that "[t]here is a split of authority" regarding joinder of patent defendants). Several other courts have declined to find that different accused products require severance. *See, e.g., Alford Safety Servs., Inc. v. Hot-Hed, Inc.*, C.A. No. 10-1319, 2010 U.S. Dist. LEXIS 98152, *27 (E.D. La. 2010) ("[T]he majority [of courts] hold the view that joinder is proper in patent infringement suits."); *Sprint Communs. Co., L.P. v. Theglobe.com*, 233 F.R.D. 615, 617 (D. Kan. 2006) ("[T]he court finds that it is proper to join Sprint's claims against the Vonage defendants with its claims against TGCI."); *Helicos Bioscience Corp.*, 2011 U.S. Dist. LEXIS 148009, at *8; *SRI International, Inc. v. Internet Security Systems, Inc.*, 2005 U.S. Dist. LEXIS 6797, at *11-*12.[6]

## V. Even Assuming Ultimate was Improperly Joined, Neither Dismissal Nor a Stay is Justified.

In the event the Court agrees with Ultimate that it is improperly joined under Rule 20(a), the appropriate remedy would be to sever Ultimate from the case, not to drop the claims against it altogether. *See Wacoh Co. v. Kionix Inc.*, No. 10-617-RGA, Mem. Op. at 4 (D. Del. Jan. 9. 2012) ("When a party is misjoined, the remedy is not dismissal. Instead, the case against the misjoined defendant … should be severed." (internal citation omitted)). Indeed, cases cited by Ultimate confirm the same. For example, in *Androphy v. Smith & Nephew, Inc.*, the court explicitly held that "misjoinder is not grounds for dismissal." 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998); *see also Philips Elecs. N, Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 418 (D. Del. 2004) (severing claims for separate trial). Dismissing the claims against Ultimate would only result in a new action, which would have to start all over again, wasting party and judicial resources.

Nor should this case be stayed even if the Court finds misjoinder. Ultimate provides no support for its request and, indeed, fails to address the factors considered by courts to determine

---

[6] There is no basis for Ultimate's claim that the "filing of the [IpLearn's amended complaint] shows that IpLearn's original complaint was just a shell." D.I. 103 at 2. Ultimate itself essentially admits that IpLearn's amendment was made in good faith, since the amendment was necessary to "identif[y] actual parties in interest and separate[] out the foreign and domestic entities for two defendants." *Id.* at 2 n.4

12

whether a stay is appropriate. *See Boston Sci. Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 788 (D. Del. 2011) ("Three general factors inform the court in this regard: (1) whether the granting of a stay would cause the non-moving party to suffer undue prejudice…; (2) whether a stay will simplify the issues for trial; and (3) whether discovery is complete and a trial date set."). And there is no basis to do so here, especially in light of the fact that Ultimate effectively requests a stay of indefinite duration. Ultimate's speculation that "there is a high potential that at least the claims … asserted against [it], if not all the claims of the asserted patents will be found invalid" ignores the presumption of validity and certainly is insufficient to warrant a stay. (D.I. 103 at 10.) And Ultimate's reliance on the Eastern District of Virginia's decision in *TecSec, Inc. v. Int'l Business Machines Corp.*, C.A. No. 10-115-LMB (D.I. 103-4) is misplaced. The court stayed that case as part of a "creative restructuring of the litigation" in light of the Court's "quick[] docket and general practice of "one or at most two defendants, but nothing like the number of defendants … named in [the] case." (Ex. L at 5-7.)

## VI.    CONCLUSION

Overlapping patents, similarities in the accused technology, related defendants, common questions of fact and law, and concerns of judicial and party resources all weigh in favor of allowing this case to proceed against the defendants in one action. As a result, IpLearn respectfully requests that the Court deny Ultimate's motion to sever.[7]

---

[7] To the extent the Court grants severance but not a stay or dismissal, IpLearn requests that the Court coordinate pre-trial activities.

|  |  |
|---|---|
| January 13, 2012 | CONNOLLY BOVE LODGE & HUTZ LLP |
|  | /s/ *Arthur G. (Chip) Connolly, III* |
|  | Arthur G. (Chip) Connolly, III (#2667) |
|  | Kristen Healey Cramer (#4512) |
| Of Counsel: | Jeremy D. Anderson (#4515) |
|  | The Nemours Building |
| Marc A. Fenster | 1007 North Orange Street |
| Russ, August & Kabat | Wilmington, DE  19801 |
| 12424 Wilshire Boulevard, 12th Floor | (302) 302-888-6318 (phone) |
| Los Angeles, CA  90025-1031 | (302) 255-4318 (fax) |
| (310) 826-7474 (phone) | aconnollyIII@cblh.com |
| (310) 826-6991 (fax) | kcramer@cblh.com |
| mfenster@raklaw.com | janderson@cblh.com |
|  |  |
|  | Attorneys for Plaintiff, |
|  | IpLearn, LLC |