MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

(302) 658-9200
(302) 658-3989 FAX

MARY B. GRAHAM
(302) 351-9199
mgraham@mnat.com

October 19, 2012

**BY E-FILING**

The Honorable Richard G. Andrews
J. Caleb Boggs Federal Building
844 N. King Street
Unit 9, Room 2325
Wilmington, DE 19801-3555

Re: *IpLearn LLC v. Beeline Acquisition Corp., et al.*,
C.A. No. 11-825 (RGA)

Dear Judge Andrews:

Oracle Corporation ("Oracle") requests that the Court resolve a dispute between Oracle and Plaintiff IpLearn LLC ("IpLearn") regarding the proposed Protective Order. While the parties have reached agreement on a majority of the provisions of the Protective Order, and expect to resolve other minor disagreements after receiving the Court's ruling on this dispute, one disagreement remains: whether the scope of the prosecution bar should cover patent acquisition activity and not just prosecution activity.

Oracle and IpLearn agree that the Protective Order in this case should include a prosecution bar, but disagree on its scope. Oracle proposes that the prosecution bar should include patent acquisition activity. IpLearn disagrees. *See* Ex. 1 (setting forth the parties' competing proposals).

The use of a prosecution bar has been approved to restrict patent prosecution by those individuals who have access to confidential information. *See In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1380 (Fed. Cir. 2010) (recognizing that attorneys who are engaged in prosecution activities "would not likely be properly exempted from a patent prosecution bar" due to "[t]he risk of inadvertent disclosure of competitive information learned during litigation"). Similarly, courts have approved acquisition bars to limit the potential for inadvertent use or disclosure of confidential information by individuals engaged in the acquisition of patents. *See, e.g.*, Ex. 2, *E-Contact Techs, LLC v. Apple, Inc.*, No. 1:11-CV-426 (E.D. Tex. Jun. 19, 2012) (D.I. 344) at 3 ("Counsel for Plaintiff has acquiesced to the imposition of a patent prosecution

bar, and, therefore, apparently agrees that there could possibly be a risk of inadvertent disclosure of Defendants' confidential information in the course of representing their client before the PTO. Therefore, it is hard to conceive that there would be little or no risk of inadvertent disclosure when these same attorneys advise their client in matters regarding acquisition of patents."); *Hyundai Motor America v. Clear With Computers, LLC*, No. 6:08cv302, 2009 WL 8657271, at *3 (E.D. Tex. May 11, 2009) ("Once [counsel] has knowledge of how Hyundai's systems work, he cannot compartmentalize that knowledge when later advising [his client] on whether particular patents should be acquired or asserted against Hyundai."); Ex. 3, *Intellectual Ventures I LLC v. Altera Corp.*, No. 10-1065-JJF (D. Del. July, 10, 2012) (D.I. 145) at 29-30 (approving an acquisition bar due to the "essential impossibility of human beings to completely segregate their minds and not make any inadvertent use whatsoever of any information once they are exposed to it"); *see also* Ex. 4, *St. Clair Intellectual Property Consultants, Inc. v. Apple Inc.*, No. 09-804-JJF (D. Del. 2010) (D.I. 33) at 5 (issuing a protective order with an acquisition bar).

The risk of inadvertent use or disclosure is especially acute where, as here, Plaintiff is a non-practicing entity ("NPE") that monetizes its patent portfolio through licensing and litigation. This is because an NPE, such as IpLearn, which is in the business of acquiring and enforcing patents against other entities, is considered a competitor of those entities as "[t]here is little doubt" that the alleged infringers' confidential information could be of value to the NPE. *ST Sales Tech. Holdings, LLC v. Daimler Chrysler Co., LLC*, No. 6:07-CV-346, 2008 WL 5634214, at *6 (E.D. Tex. Mar. 14, 2008); *see also Hyundai Motor*, 2009 WL 8657271, at *3 (holding that a patent holding company is a "competitor" to defendant Hyundai Motor America).

Plaintiff IpLearn is an NPE that claims to have an active patent licensing business. *See* Ex. 5, www.iplearn.com/index.html; IpLearn LLC's Answering Brief in Opposition to Defendant Oracle Corporation's Motion to Dismiss To [sic] Sever (D.I. 133) at 16 ("[IpLearn] actively seeks to license its patented innovations."). Moreover, according to IpLearn's website, one of its founders and managing partner, Peter Tong, "is also the co-founder of IpVenture, which creates, ***acquires*** and licenses technologies and patents." *See* Ex. 6, www.iplearn.com/aboutus.html (emphasis added).

Moreover, one of IpLearn's outside counsel in this case, Russ August & Kabat, states that it represents clients in procuring, licensing and litigating patents. *See* Ex. 7, http://www.raklaw.com/intellectual_property.html ("From procuring and licensing intellectual property to full-scale litigation, we deliver an uncompromising commitment to the highest quality of intellectual property representation."). Similarly, Marc Fenster, one of IpLearn's lawyers from Russ August & Kabat, states in his web bio that his practice includes patent litigation and "advis[ing] clients regarding various intellectual property and licensing issues in a nonlitigation context . . . ." *See* Ex. 8, http://www.raklaw.com/attorneys/marc_fenster.html. Further, Russ August & Kabat represents several other non-practicing entities, including Minerva, VoxPath, Linksmart, and DataTern. *See* Ex. 7 (listing the firm's "significant current and recent representations"); Ex. 9 (articles characterizing foregoing entities as NPEs).

Through discovery in this lawsuit, the attorneys and experts for IpLearn will have access to an enormous volume of Oracle's highly confidential and sensitive information,

including source code, Technical Design Documents, and Functional Design Documents, all of which show in detail exactly how Oracle implements functionality in the accused products.[1] This information would provide a roadmap for patent acquisitions, prosecution, and future licensing demands and litigation against Oracle. Recognizing the risk of disclosure, IpLearn has agreed to a prosecution bar. That same risk applies equally to patent acquisitions in this context. *See Deutsche Bank*, 605 F.3d at 1380 (recognizing as competitive decision making both "crafting the content of patent applications" and "advising clients on the direction to take their portfolios").

IpLearn cannot diminish this fundamental risk simply by asserting that there is a distinction between acquiring patents and prosecuting patents. First, there is "little doubt" that Oracle's confidential information would be of value to IpLearn and IpLearn's counsel in determining whether to acquire a patent that may ultimately be asserted against Oracle. *See ST Sales Tech.*, 2008 WL 5634214, at *6. Second, by agreeing to a patent prosecution bar, counsel for IpLearn acknowledges that there could possibly be a risk of inadvertent disclosure of Oracle's confidential information in the course of proceedings before the PTO. As recognized in *E-Contact Techs*, it is difficult to conceive that there would be little or no risk when these same individuals advise their clients in matters regarding acquisition of patents. *See* Ex. 2, *E-Contact Techs*, No. 1:11-CV-426 (E.D. Tex. Jun. 19, 2012) (D.I. 344) at 3.

Finally, Oracle's proposed acquisition bar is narrowly tailored to balance the potential harm of inadvertent disclosure and the restriction imposed on IpLearn. The parties have agreed to limit the scope of the bar such that it does not apply to individuals who have not accessed, reviewed, or seen information marked as Attorneys' Eyes Only or as Source Code by Oracle. *See* Ex. 1. Further, Oracle's proposed acquisition bar only applies to acquisition activity "reasonably related to the patents-in-suit or the subject matter thereof." *Id.* Thus, IpLearn's counsel will be able to advise its clients regarding patent acquisitions unrelated to the technology in this case.

For the foregoing reasons, Oracle respectfully requests that the Court order the parties to submit a proposed Protective Order that includes Oracle's proposed acquisition bar language set forth in Ex. 1.

Respectfully,

*/s/ Mary B. Graham*

Mary B. Graham (#2256)

MBG/dam
cc: All Counsel of Record (*by CM/ECF*)
6555756

---

1 Oracle has already produced over 112,000 highly confidential technical documents in this case, which are not publicly available and describe in detail the operation of the accused Oracle products.