IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **IpLearn, LLC,** | |
| Plaintiff; | |
| v. | Civil Action No. 11-825-RGA |
| **Kenexa Corporation, et al.,** | |
| Defendants. | |
| **IpLearn, LLC,** | |
| Plaintiff; | |
| v. | Civil Action No. 11-876-RGA |
| **Blackboard, Inc.,** | |
| Defendant. | |
| **IpLearn, LLC,** | |
| Plaintiff; | |
| v. | Civil Action No. 11-1026-RGA |
| **K12, Inc.,** | |
| Defendant. | |

MEMORANDUM OPINION

Ryan P. Newell, Esq., Connolly Gallagher LLP, Wilmington, DE; Benjamin T. Wang, Esq. (argued), Russ August & Kabat, Los Angeles, CA; Marc A. Fenster, Esq., Russ August & Kabat, Los Angeles, CA, attorneys for Plaintiff IpLearn, LLC.

Mary B. Graham, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Andrew B. Grossman, Esq. (argued), WilmerHale, Los Angeles, CA; Peter O'Rourke, Esq., Oracle Corporation, Redwood Shores, CA, attorneys for Defendant Oracle Corporation.

Jack B. Blumenfeld, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Joseph A. Loy, Esq. (argued), Kirkland & Ellis LLP, New York, NY; Mangesh Kulkarni, Esq. (argued), Kirkland & Ellis LLP, New York, NY, attorneys for Defendant K12, Inc.

Eve H. Ormerod, Esq., Greenberg Traurig, LLP, Wilmington, DE; Scott J. Bornstein, Esq. (argued), Greenberg Traurig, LLP, New York, NY; Allan A. Kassenoff, Esq., Greenberg Traurig, LLP, New York, NY, attorneys for Defendant Blackboard, Inc.

Phillip A. Rovner, Esq., Potter Anderson Corroon LLP, Wilmington, DE, attorney for Defendant Ultimate Software Group Inc.

October 22, 2013

*[Signature]*
ANDREWS, U.S. District Judge:

Pending before this Court is the issue of claim construction of various disputed terms found in U.S. Patent No. 6,126,448, U.S. Patent No. 6,213,780, U.S. Patent No. 6,685,478, U.S. Patent No. 6,398,556, U.S. Patent No. 6,688,888, and U.S. Patent No. RE 38,432.

## I. BACKGROUND

On September 15, 2011, IpLearn, LLC ("Plaintiff") filed a patent infringement action (No. 11-825 D.I. 1) against Oracle Corporation, The Ultimate Software Group Inc., and other defendants who are no longer parties to this action. Plaintiff also filed suit against Blackboard, Inc. on September 27, 2011 (No. 11-876 D.I. 1) and against K12, Inc. on October 26, 2011 (No. 11-1026 D.I. 1). The Court has considered the Parties' Amended Joint Claim Construction Briefs (No. 11-825 D.I. 363, No. 11-876 D.I. 101, No. 11-1026 D.I. 89). The Court held oral argument on a portion of the disputed claim terms on September 30, 2013. (No. 11-825 D.I. 388, No. 11-876 D.I. 106, No. 11-1026 D.I. 105).

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324). When construing patent claims, a matter of law, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v.*

1

*Westview Instruments, Inc.*, 52 F.3d 967, 977-80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotations and citations omitted).

Furthermore, "the words of a claim are generally given their ordinary and customary meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e. as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. (internal citations omitted).

A court may consider extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises," in order to assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art and how the invention works. *Id.* at 1317-19 (internal quotation marks and citations omitted). However, extrinsic evidence is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

Finally, "[a] claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa'*

*per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

### III. CONSTRUCTION OF DISPUTED TERMS

A. *"computer-aided/computer implemented"*

1. *Plaintiff's proposed construction*: plain and ordinary meaning.
2. *Defendants' proposed construction*: "performed entirely by a computer."
3. *Court's Construction*: "each step of the method is performed by a computer."

The Plaintiff argues that the phrase should not be construed because its meaning is plain. (No. 11-876 D.I. 101 at 77). In response, the Defendants contend that because the co-inventor did not know what the terms meant, that they require construction. (No. 11-876 D.I. 101 at 7). The Defendants also point out that the patents explain that it is the computer, not a human being, who is doing the teaching. (No. 11-876 D.I. 101 at 8).

The Court finds that the patents require that a computer performs the method. The patents clearly explain that the invention is "applicable to any subject that can be taught by a computer." (Col. 1 lines 66-67 of '208). However, while the recited method steps must be performed by a computer, there may be some human involvement. Indeed, certain steps specifically describe human involvement, for instance where "the method allows the person to search." (Claim 9 of '888). Furthermore, as the claims use the term "comprising," additional steps may be performed without the use of a computer.

B. *"rules"*

3

1. *Plaintiff's construction*: plain and ordinary meaning.
2. *Defendants' construction*: "pre-stored relationships among line items and subject areas that can be applied to test results."
3. *Court's construction*: plain and ordinary meaning.

The Plaintiff again argues that the phrase should not be construed because its meaning is plain. (No. 11-876 D.I. 101 at 77). Defendants argue that rules are limited to a certain type of relationship rules that define the relationship among the line items and the subject. (No. 11-876 D.I. 101 at 51).

Both parties agree that the patent discloses multiple types of rules, such as "relationship rules" and "analysis rules." (No. 11-876 D.I. 101 at 51). Limiting the term "rules" to a subset would improperly import the specification into the claims. Based on the specification and the context in which "rules" is used in the claims, there is no ambiguity which would require the Court to further construe this term. Therefore, "rules" has its plain and ordinary meaning.

C. *"generating materials for learning the subject"*

1. *Plaintiff's construction*: plain and ordinary meaning.
2. *Defendants' construction*: "creating learning materials specifically tailored for a particular learner by the computer."
3. *Court's construction*: "generating learning materials tailored for a particular learner."

Here the only material dispute between the Plaintiff and the Defendants is whether the materials are "specifically tailored" to the learner.[1] (No. 11-1026 D.I. 89 at 50). At the outset,

---

[1] As the Court has already construed "computer-aided/computer implemented" as requiring that a computer perform the method steps, the phrase "by the computer" in Defendants' proposed construction is unnecessary.

4

the Court recognizes that the term "specifically" is redundant. The degree to which the learning materials are tailored is not at issue. The issue is whether they are tailored to the learner in the first place. The term in dispute only appears in claim 10 of the '888 patent. Claim 10 is dependent on claim 9. Reading the claims together, it is clear that the learning materials are tailored for the learner.

The claims require that a learner's test results are analyzed to determine a weakness and then guidance is provided to the learner to target the weakness. The additional step of generating materials for learning the subject is a type of guidance. Because guidance is provided to target the learner's particular weakness, the guidance must inherently be tailored to that learner.

D. *"a report"*

1. *Plaintiff's construction*: plain and ordinary meaning.
2. *Defendants' construction*: "a computer-generated assessment of the strengths and weaknesses of the learner."
3. *Court's construction*: "a computer-generated report."

The Plaintiff argues that the phrase should not be construed because its meaning is plain. (No. 11-1026 D.I. 89 at 53). Defendants' proposed construction is taken from a portion of the specification describing a report. (No. 11-1026 D.I. 89 at 47). The Court sees no need to further limit or construe the term "report," and therefore gives that term its plain and ordinary meaning. Most people are familiar with the term in the context of education and computers. However, to further enhance clarity, the Court's construction requires that the report be generated by a computer. Based upon a fair reading of the specification and the claims, it is clear that it is the computer, and not a human actor, that generates the report.

5

E. *"providing guidance to the learner to target the at least one weakness"*

 1. *Plaintiff's construction*: plain and ordinary meaning.
 2. *Defendants' construction*: "providing computer-generated action items to the learner to improve on the learner's weakness in the learner's understanding in the subject."
 3. *Court's construction*: plain and ordinary meaning.

The Plaintiff argues that the phrase should not be construed because its meaning is plain. (No. 11-1026 D.I. 89 at 53). Defendants argue that their proposed construction is consistent with the intrinsic evidence. (No. 11-1026 D.I. 89 at 44). Based upon the Court's previous construction of the term "computer-aided/computer implemented," it is clear that it is the computer that provides the guidance. Therefore Defendants' proposed construction of "action items" is unnecessarily limiting. Furthermore, a jury will have no difficulty in determining the plain meaning of the term "guidance."

F. *"learning user"*

 1. *Plaintiff's construction*: "an individual user who uses the system to access learning materials."
 2. *Defendants' construction*: "current or potential employee of an institute user who is primarily interested in learning and incurs significantly less expense than the institute user."
 3. *Court's construction*: "current or potential employee or customer of an institute user who uses the system/method to access learning materials inexpensively."

The dispute over this term is twofold. First, the identity of the learning user, and second,

6

whether the learning user must necessarily incur less expense than the institute user. It is clear that in certain embodiments, and perhaps in all embodiments, the learning user incurs less expense than the institute user. The patentees made clear that the novelty of the '556 patent was that the learning materials would be inexpensive for the learning user. For example, in the Abstract, three of the eight sentences are about the inexpensiveness to the learning user. The patent's title starts with the word "inexpensive." The Background of the Invention and the Summary of the Invention both hammer home the concept that the inventive aspect is creating a way to get computer-assisted materials to people inexpensively. To construe the claims to read out the "inexpensive" concept would result in the claims being broader than what the patentees described as their invention. While there is an independent claim that has a limitation that somewhat addresses the expense issue,[2] even it does not include an inexpensiveness limitation. Therefore, the Court's construction includes an inexpensiveness limitation.

As to the identity of the user, the primary difference between the two constructions is whether the learning user may be a student in the traditional sense of the term, as in a student of a school. The patents continually discuss the invention in relation to a commercial setting. The only mention of the term "school" is in Figure 3 and the related discussion of the figure. (Col. 4 lines 30-34 of '478). All other discussions of the identity of the learning user imply that there is a traditional business relationship between the learning user and the institute user. Defendants' construction properly encompasses the "current or potential employee" embodiment of the invention, but does not cover the embodiment where the learning user is a customer or potential

---

[2] Independent claim 32 of '556 requires a "learning user, who pays less than an institute user to access materials." I note that Defendants' proposed construction is further limiting, as it requires not just less expense, but "significantly less expense."

7

customer. (*see* Col. 11-12 of '478). Therefore the term "customer" has been added to the claim construction.

Additionally, it is not always the case according to the invention that the learning user is "primarily interested in learning," but in order to be a "learning" user, one must use the method to learn. This requires accessing learning materials.

G. *"institute user"*

1. *Plaintiff's construction*: "an organization or a representative of an organization, which has an interest in accessing information relating to a learning user."

2. *Defendants' construction*: "an organization or representative of an organization that is primarily interested in accessing personal information relating to a learning user," or "an organization that pays for access to personal information regarding a learning user."

3. *Court's construction*: "an organization or a representative of an organization that has an interest in accessing information relating to a learning user."

The dispute over this term hinges on whether the institute user must pay for access and whether the institute user must be "primarily interested" in accessing personal information. Incorporating the limitation which requires that the institute user pays for access would make subsequent limitations within the same claim superfluous.[3] Therefore, the Court's construction of "institute user" does not require that the institute user pay for access.

As for the whether the institute user "has an interest" in accessing information or is

---

[3] Independent claim 2 of '556 requires that the institute user "pays to access materials regarding the at least one learning user." Five of the seven additional independent claims (claims 25, 37, 41, 45, and 49) have identical language, and the other two independent claims (claims 32 and 53) have similar language requiring that the institute user pays to access materials.

8

"primarily interested" in accessing information, while the specification uses the phrase "primarily interested," (Col. 4 lines 16-18 of '556), it does so in the context of specific embodiments. Nothing in the Summary of the Invention, however, appears to require that the interest be the "primary interest." Therefore, the Court's construction will not import limitations from specific embodiments into the claims.

H. *"attribute"*

1. *Plaintiff's construction*: plain and ordinary meaning or "information such as contact information, educational background, work experience, preferences, and learning objective of the learning user."

2. *Defendants' construction*: "contact information, educational background, work experience, preferences, or learning objective."

3. *Court's construction*: "information such as contact information, educational background, work experience, preferences, or learning objective."

Here the only material dispute is whether the term "attribute" is limited to the particular embodiments disclosed in the specification. The Court holds that it is not so limited, but construes the term to include those embodiments and leave open the possibility of undisclosed embodiments of the same nature as the disclosed embodiments.

I. *"materials regarding at least one learning user"*

1. *Plaintiff's construction*: plain and ordinary meaning or "materials such as user profile, contact information, educational background, work experience, preferences, and learning objective of the learning user."

2. *Defendants' construction*: "user profile, including contact information,

9

educational background, work experience, preferences, and learning objective."

3. *Court's construction*: "materials about the learning user such as user profile, contact information, educational background, work experience, preferences, and learning objective."

As with the term "attribute," the Court construes this term to leave open the possibility of undisclosed embodiments of the same nature as the disclosed embodiments.

J. *"monitoring"*

1. *Plaintiff's construction*: plain and ordinary meaning or "monitoring information such as contact information, work experience, preferences, and learning activities."

2. *Defendants' construction*: "tracking contact information, work experience, preferences, and learning activities."

3. *Court's construction*: "monitoring information such as contact information, work experience, preferences, and learning activities."

As with the term "attribute," the Court construes this term to leave open the possibility of undisclosed embodiments of the same nature as the disclosed embodiments.

K. *"a need"*

1. *Plaintiff's construction*: plain and ordinary meaning.

2. *Defendants' construction*: "a specific individual learning objective."

3. *Court's construction*: "educational objective."

The Plaintiff argues that the phrase should not be construed because its meaning is plain. (No. 11-1026 D.I. 89 at 53). Defendants argue that the term should be limited to a "specific

10

individual learning objective." (No. 11-1026 D.I. 89 at 35). The Court agrees that "a need" should be limited to an educational context, as that is what the inventors invented. The Defendants' construction is needlessly and improperly limiting, hence the Court has construed the term as an "educational objective."

L. *"update information on the job position due to changes in information on the job position to identify a candidate for the job position/information on the job is updated in view of changes in the job based on an input, and wherein another learning user can be identified in view of changes in the job"*

1. *Plaintiff's construction*: plain and ordinary meaning.

2. *Defendants' construction*: "update attributes of the job position due to changes in the job position and, in view of the modification, automatically perform another identification of potential candidates/modify attributes of the job due to changes in the job and, in view of the modification, automatically perform another identification of potential candidates."

3. *Court's construction*: "information on the job is updated in view of changes in the job based on an input, and the computer, on request, can identify another learning user as a candidate for the job."

The dispute over this term is whether the identification of candidates occurs automatically after the updating of information or whether embodiments exist where such identifications are not automatic. (No. 11-825 D.I. 363 at 16). The Court's construction interprets this term as not requiring an automatic search. The claim uses the term "can," which implies that updates are not automatic. The mere fact that certain embodiments describe automatic updating

11

does not limit the scope of the claim to that particular embodiment.

    M. *"becoming aware of a learning user's understanding in an area"*

        1. *Plaintiff's construction*: plain and ordinary meaning.

        2. *Defendants' construction*: indefinite.

        3. *Court's construction*: "determining a learning user's understanding in an area."

The Plaintiff argues that this phrase is clear as written and needs no construction. (No. 11-1026 D.I. 89 at 23). Defendants argue that the term is indefinite because it is not clear who is becoming aware. (No. 11-1026 D.I. 89 at 25). Based on the Court's construction of the terms "computer-aided/computer implemented," it is clear that it is the computer that "becomes aware" of the learning user's understanding in an area. However, to clarify that the patentees have not invented artificial intelligence, the Court's construction uses the term "determining" rather than "becoming aware."

    N. *"wherein the materials accessed can be retrieved"*

        1. *Plaintiff's construction*: plain and ordinary meaning.

        2. *Defendants' construction*: indefinite.

        3. *Court's construction*: plain and ordinary meaning.

The Plaintiff argues that this phrase is clear as written and needs no construction. (No. 11-825 D.I. 363 at 30). Defendants argue that the term is indefinite because the public does not know to which "materials" the term refers. (No. 11-825 D.I. 363 at 31). Claim 1 of the '478 patent describes two steps where materials are accessed. The first allows the institute user to access materials regarding the learning user, and the second allows the learning user to access materials for learning. (*see* claim 1 of '478). Essentially, Defendants argue that because two

12

different types of materials are being accessed, the term is indefinite.[4] However, solely because the term refers to more than one type of material does not mean that it is indefinite. As Plaintiff's counsel pointed out during oral argument, the term is "referring to two different types of materials that can be accessed." (No. 11-1026 D.I. 105 at 138, lines 16-17). It does not appear from the face of the claims that this term is indefinite. The Court construes the term to have its plain and ordinary meaning. In regard to claim 1 of the '478 patent, then, "the materials accessed" refers to both the materials regarding the learning user and the materials for learning.

O. *"considers at least a preference of the learner, other than the fact that the learner might prefer to learn the subject"*

1. *Plaintiff's construction*: "considers at least a pre-stored preference of the learner, other than the fact that the learner might prefer to learn the subject."
2. *Defendants' construction*: indefinite.
3. *Court's construction*: "considers at least a pre-stored preference of the learner, and the 'pre-stored preference' cannot be the fact that the learner might prefer to learn the subject."

The Plaintiff argues that because this term is not insolubly ambiguous it is not indefinite. (No. 11-876 D.I. 101 at 75). While Defendants' brief did not appear to address the term, other than to say the term is indefinite, counsel did discuss the term during oral argument. (No. 11-1026 D.I. 105 at 142-145). Defendants essentially argue that because there is no other mention of preferences earlier in the claim, nor is there any discussion of the type of preferences or how they are determined, the term is ambiguous. However, the term is not insolubly ambiguous on its face,

---

[4] Claim 8 of the '556 patent describes only one accessing step, hence there is no ambiguity in that claim.

13

and while there might not be any mention of the type of preferences or how they are determined, the person of ordinary skill in the art would understand the meaning of the claim term. Because Defendants offer no competing construction, the Court adopts Plaintiff's construction, with minor clarification.

## IV.     CONCLUSION

Within five days the parties should submit a proposed order, consistent with this opinion, suitable for submission to the jury.

14