November 7, 2013

**BY E-FILING**

The Honorable Richard G. Andrews
U.S. District Court for the District of Delaware
844 North King Street
Wilmington, Delaware 19801-3570

Re:  *IpLearn, LLC v. Oracle Corp., et al.*, C.A. No. 11-825 (RGA)
   *IpLearn, LLC v. Blackboard, Inc.*, C.A. No. 11-876 (RGA)
   *IpLearn, LLC v. K12 Inc.*, C.A. No. 11-1026 (RGA)

Dear Judge Andrews:

K12 Inc. ("K12"), Oracle Corporation ("Oracle"), The Ultimate Software Group, Inc. ("Ultimate"), and Blackboard Inc. ("Blackboard") (collectively, "Defendants") submit this letter brief in response to IpLearn's October 31, 2013 letter brief regarding the construction of the term "learning user" from U.S. Patent Nos. 6,685,478 (the "'478 patent") and 6,398,556 (the "'556 patent"), and the term "the user" from the '556 patent.[1]

## I.  The Term "The User" in the '556 Patent Is Insolubly Ambiguous

IpLearn has now had three opportunities to explain the meaning of "the user" in claims 8, 28, 66, and 74 of the '556 patent – first in its Markman brief, then at the October 24, 2013 oral argument, and most recently in its October 31, 2013 Letter Brief.  But, rather than clarify the meaning of the claim term, IpLearn has offered three different constructions at these three different times.  Making matters even more confusing, IpLearn's constructions are inconsistent with each other.  While IpLearn now tries to dismiss its own prior interpretation of "the user" simply as an "error" (Letter Brief at 4 n.2), the problem is more fundamental:  The claim language is not amenable to construction.

The purpose of the definiteness requirement is to ensure that "the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the scope of the patentee's right to exclude." *Honeywell Int'l, Inc. v. Int'l Trade Comm'n,* 341 F.3d 1332, 1338 (Fed. Cir. 2003) (quotation marks omitted); *see also Hoganas AB v. Dresser Indus., Inc.,* 9 F.3d 948, 951 (Fed. Cir. 1993) ("It would not be appropriate for us now to interpret the claim differently just to cure a drafting error.... That would unduly interfere with the function of claims in putting competitors on notice of the scope of the claimed invention.").  If the meaning of "the user" is not even clear to the patentee, then surely the public cannot be expected to make sense of the term as used in the asserted claims.

---

[1]  K12 joins in this letter only with respect to the construction of "learning user" in the '478 patent. K12 takes no position on the issues concerning the '566 patent, which has not been asserted in *IpLearn LLC v. K12 Inc.,* C.A. No. 11-1026 (RGA).

### A. IpLearn's Changing Constructions

In its Markman Brief, IpLearn asserted that "the user" means "a user of the apparatus" throughout the claims. (Joint Claim Construction Br. (D.I. 363, *IpLearn, LLC v. Oracle Corp.*, et al., C.A. No. 11-825 (RGA)) at 25.)

However, during oral argument at the October 24, 2013 claim construction hearing, IpLearn suggested that "the user" should not be interpreted as broadly as "a user of the apparatus"; rather, "the user" is either the institute user or the learning user, or both, depending on the context within each step of the claims. (Ex. A, Oct. 24, 2013 Markman Hearing Tr. at 43 ("[t]he claim contemplates, consistent with the specification, that there are two types of users; learning users and institute users."); *id.* at 45 ("There are two types of users. We divide the world into two types; learning users and institute users.").) More specifically, at oral argument, IpLearn offered the following identification of "the user" in each limitation of representative claim 8[2]:

| Limitation | IpLearn's Identification of "The User" |
|---|---|
| [PREAMBLE] A computer aided learning method for a user comprising the steps of: | "A user" refers to "either an institute user or a learning user." (*Id.* at 60.) |
| [A][3] retrieving, by a first computer, materials related to the user; | "The user" refers to a "learning user" (*Id.* at 60-61 ("[I]t's clear from the specification that it's retrieving information relating to a learning user.").) |
| [B] permitting, by the computer, the user to access materials regarding at least one learning user if the user is an institute user, as determined based on an identifier of the user; | "The user" "can be either a learning user or an institute user." (*Id.* at 61; *see also Id.* at 62 ("This user is the person who is using the system which may be an institute user or a learning user.").) |

---

[2] The parties have agreed that, for purposes of the indefiniteness issue, claim 8 is representative of additional asserted claims 28, 66, and 74.

[3] For convenience, Defendants' identification of claim elements corresponds to those in IpLearn's October 31, 2013 letter.

| Limitation | IpLearn's Identification of "The User" |
|---|---|
| [C] tracking, by the computer, materials regarding the user; | "The user" "is again the learning user." (*Id.* at. 63.) |
| [D] updating, by the computer, materials regarding the user based on the tracked materials; | "The user" "is again the learning user." (*Id.* at 63.) |
| [E] wherein if the user is the institute user, the institute user can learn about the at least one learning user in an area the institute user is interested; | "The at least one learning user" is the "at least one learning user" in the "permitting" step [C]. (*Id.* at 63.) |
| [F] wherein the materials accessed can be retrieved by at least one of the users from another computer, which is connected to the first computer through a network; | "At least one of the users" is "one of the institute users." (*Id.* at 64.) |
| [G] wherein the institute user pays to access materials regarding the at least one learning user; | Not discussed by IpLearn. |
| [H] a learning user is allowed to access materials on a subject to learn and to work on, to perform a task; | "A learning user" is "just a learning user of the method." (*Id.* at. 65.) |
| [I] materials on at least one of the users can be tracked and updated; | "At least one of the users" is the learning user. (*Id.* at 65.) |
| [J] wherein the method further comprises ascertaining materials for a learning user to learn based on an attribute of the learning user; | Not discussed by IpLearn. |

| Limitation | IpLearn's Identification of "The User" |
|---|---|
| [K] wherein if the user is a learning user, the step of tracking includes tracking the user's learning activities; wherein the user is learning features of a product and the activities tracked include the one or more features the user worked on; and | Not discussed by IpLearn. |
| [L] wherein the method is implemented at a Web site. | |

In its Letter Brief (D.I. 416, *IpLearn, LLC v. Oracle Corp.*, et al., C.A. No. 11-825 (RGA)), IpLearn now seeks to construe "the user" in a manner that is fundamentally different from the interpretations that it previously insisted at oral argument to be "clear" from the specification. (Ex. A, Oct. 24, 2013 Markman Hearing Tr. at 60, 61.)

*First*, IpLearn contends that there may be users **other than** learning users and institute users, whereas IpLearn previously contended that the claimed method "is specifically designed to be used . . . by *two* different types of users." (Ex. A, Oct. 24, 2013 Markman Hearing Tr. at 59 (emphasis added); *see also* Ex. A, Oct. 24, 2013 Markman Hearing Tr. at 45 ("There are *two* types of users. We divide the world into *two* types; learning users and institute users") (emphases added).)

*Second*, whereas IpLearn previously contended that "the user" in the retrieving [A], tracking [C], and updating [D] steps refers to a learning user, IpLearn now argues that "the user" in these steps can be "any type of user," even a user other than an institute user or learning user.

*Third*, at the claim construction hearing, IpLearn asserted that the "at least one of the users" referenced in step [F] was "one of the institute users," but now suggests that it can be any type of user.

*Fourth*, IpLearn previously argued that the "at least one of the users" in step [I] is the learning user; now, IpLearn contends that it can be any type of user.

IpLearn's inability to put forth a coherent and consistent interpretation of "the user" in the claims only serves to highlight their insoluble ambiguity.[4]

### B.   "The User" Is Not Amenable To Construction

For at least five reasons, "the user" is insolubly ambiguous as it appears in the asserted claims.

*First*, it cannot be that "a user" in the preamble and "*the* user" in the steps of the claim have the same meaning, as IpLearn contends. "A user" is open-ended and could be one or more of any type of user. For example, "a user" could be one learning user and two institute users. But "*the* user" as used in the body of the claim *cannot* be any type of user, and it *cannot* be multiple users. It must be one user, and it is constrained by whatever user provides its antecedent basis. If "*a* user" is multiple users (or, more confusingly still, multiple different types of users), then it is impossible to determine who "*the* user" would be in the remainder of the claim. *See Abtox Inc. v. Exitron Corp.*, 122 F.3d 1019, 1024 (Fed. Cir. 1997) (holding that while the term "a chamber" generally means one or more chambers, subsequent references to "said chamber" in the claim "reinforces the singular nature of the chamber").

*Second*, if, as IpLearn contends, "*the* user" throughout the claim is the same as "*a* user" in the preamble, the claim would be utterly nonsensical. For example, if, for the sake of simplicity, "a user" in the preamble is a single learning user, then the permitting step would need to be interpreted as: "permitting, by the computer, **the learning user** to access materials regarding at least one learning user if **the learning user** is an institute user, as determined based on the identifier of the learning user."

*Third*, there is no antecedent basis for "at least one of the users" in step [F]. IpLearn contends that "at least one of the users" is the same as "a user" in the preamble. But, that interpretation, which relies on the assumption that "a user" can be multiple users, is inconsistent

---

[4]   *See Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1563 (Fed. Cir. 1995) ("Claim drafting is itself an art, an art on which the entire patent system today depends. The language through which claims are expressed is not a nose of wax to be pushed and shoved into a form that pleases and that produces a particular result a court may desire. The public generally, and in particular, the patentee's competitors, are entitled to clear and specific notice of what the inventor claims as his invention. That is not an easy assignment for those who draft claims, but the law requires it, and our duty demands that we enforce the requirement. There is no room in patent claim interpretation for the equivalent of the *cy pres* doctrine; that would leave the claiming process too indefinite to serve the purposes which lie at the heart of the patent system.").

with IpLearn's argument that the references throughout the claim to "the user" – in the singular – are the same user as in the preamble.

*Fourth*, steps [H] and [J] refer to "a learning user," which IpLearn has not even attempted to identify. So, at a minimum, these recitations must each be something different from the user recited in the preamble. Yet, IpLearn concludes that the references to "the user" in the steps that immediately follow "a learning user" in steps [H] and [J] refer back to the user in the preamble. IpLearn provides no basis for that conclusion, and certainly none is clear in the intrinsic evidence. For example, "at least one of the users" in step [I] might refer to "a learning user" in the step [H], the "at least one learning user" in step [G], the user of the preamble, or the user in another step – it is impossible to tell.

Making matters even more confusing, step [K] also references "a learning user." But here, IpLearn does not suggest that "a learning user" refers to "any learning user," as it does for the prior two references to "a learning user." Instead, IpLearn suggests, without any basis, that "the user" in this step refers again to the user in the preamble. IpLearn fails to address that the public could reasonably believe that the "a learning user" in step [K] refers to the "a learning user" in either of step [H] or [J], neither of which is suggested by IpLearn, or to the user in the preamble, as IpLearn suggests. Neither the claims nor IpLearn's attempts to identify the various users in the claims do anything to resolve this ambiguity. The public is left to guess at which "a learning user" the recitation of "a learning user" in step [K] refers.[5]

*Fifth*, if, as IpLearn contends, the specification suggests that the claimed users can also include "other types of users, such as system administrators, but only two are shown in Fig. 3," (Ex. B, '556 patent, col. 4:10-12), then the claim becomes more confusing still. Taking IpLearn's suggestion, the ambiguity of "the user" increases exponentially, contradicting both the spirit and the letter of the patent law requiring clear and specific notice of the claimed invention.

---

[5] MPEP 2173.05(e) Lack of Antecedent Basis
A claim is indefinite when it contains words or phrases whose meaning is unclear. The lack of clarity could arise where a claim refers to "said lever" or "the lever," where the claim contains no earlier recitation or limitation of a lever and where it would be unclear as to what element the limitation was making reference. Similarly, if two different levers are recited earlier in the claim, the recitation of "said lever" in the same or subsequent claim would be unclear where it is uncertain which of the two levers was intended. A claim which refers to "said aluminum lever," but recites only "a lever" earlier in the claim, is indefinite because it is uncertain as to the lever to which reference is made.

There is no possible coherent interpretation of "the user" in the asserted claims, and IpLearn's attempt to offer one illustrates how truly ambiguous the claim language is. Accordingly, the Court should rule claims 8, 28, 66, and 74 invalid as indefinite.

## II. The Term "Learning User" Should Not Be Reconstrued

IpLearn also improperly reargues its claim construction positions for the term "learning user," which this Court has already construed in its October 22, 2013 Memorandum Opinion (D.I. 117, *IpLearn LLC v. K12 Inc.*, C.A. No. 11-1026 (RGA)) after considering the parties' briefing, the evidence, and oral arguments. IpLearn's request fails to meet the Third Circuit's heavy standard for reconsideration, as IpLearn bases its argument entirely on the specification, rehashing arguments that it had previously made in its briefing and during the September 30, 2013 *Markman* Hearing—arguments which this Court already rejected. As this Court has properly considered the relevant facts, including the patent, its specification, prosecution history, and the applicable claim construction law, no errors of law or fact were committed. Nor has IpLearn presented any new legal authority or newly discovered evidence to justify revisiting the Court's ruling. Accordingly, the Court's construction of "learning user" should stand.

### A. Legal Standard for Reconsideration

The Third Circuit has imposed a high bar for reconsideration of issues already decided, explaining that:

> A motion for reconsideration may be granted only if the movant can show at least one of the following: (i) there has been an intervening change in controlling law; (ii) the availability of new evidence not available when the court made its decision; or (iii) there is a need to correct a clear error of law or fact to prevent manifest injustice.

*Cooper Notification, Inc. v. Twitter, Inc.*, 867 F. Supp. 2d 485, 501 (D. Del. 2012) (citing *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)) (denying plaintiff's request for reconsideration and request for clarification regarding claim construction). This standard applies in equal force to a litigant's request to reconsider a *Markman* decision. *Flash Seats, LLC v. Paciolan, Inc.*, C.A. No. 07-575-LPS, 2011 WL 4501320, at *3 (D. Del. Sept. 28, 2011) (denying request for reconsideration of claim construction ruling).

Instead, reconsideration will "be granted only sparingly" and is "not to be used simply to rehash arguments which have been previously briefed by the parties and considered and decided by the Court." *Id.* at *2. Nor is reconsideration "a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Ampex Corp. v.*

*Eastman Kodak Co.*, C.A. No. 04-1373-KAJ, 2006 WL 3359660, at *1 (D. Del. Nov. 20, 2006) (quoting *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990) (internal quotation marks omitted)); *MobileMedia Ideas, LLC v. Apple, Inc.*, -- F. Supp. 2d. --, 2013 WL 4764037, at *3 (D. Del. Sept. 5, 2013) (denying reconsideration where the supposed bases "merely constitute [the plaintiff]'s disagreement with the court's conclusions and rehash [the plaintiff]'s claim construction . . . arguments."). In addition, limiting the circumstances in which the Court will allow reconsideration is consistent with this Court's Local Rules. *See* L.R. 7.1.5(a) (explaining that "motions for reargument shall be sparingly granted"); *see also Cordance Corp. v. Amazon.com, Inc.*, C.A. No. 06-491-MPT, 2008 WL 185531, at *1–*3 (D. Del. Jan. 22, 2008) (interpreting Local Rule 7.1.5 and denying motion for reconsideration).

### B. Reconsideration Is Not Warranted

IpLearn has failed to meet the burden necessary to justify reconsideration. There has been no change in the law governing claim construction. Nor has IpLearn presented any new evidence that was previously unavailable. IpLearn has also failed to show any clear error of law or fact or manifest injustice. Instead, IpLearn merely repackages arguments it made during the hearing and in its claim construction briefing.

IpLearn's burden is "particular[ly] difficult to meet where, as here, all the evidence and argument made to the Court in connection with [its request for reconsideration] [were] already before the Court at the time it made its Markman decision." *Flash Seats*, 2011 WL 4501320, at *4. IpLearn extensively briefed the scope of "learning user" as part of its claim construction briefing, including citations to legal precedent concerning the scope of claim construction. *See* Joint Claim Construction Brief (D.I. 89, *IpLearn LLC v. K12 Inc.*, C.A. No. 11-1026 (RGA)) at 9–12; Exhibit 9 at 11–13 (discussing IpLearn's belief as to the scope of "learning user"); Ex. C, September 30, 2013 *Markman* Hearing Tr. at 91–95 (presenting IpLearn's argument that "learning users" access information regarding learning materials). This evidence has already been considered by the Court when it determined its construction. *See* Memorandum Opinion (D.I. 117, *IpLearn LLC v. K12 Inc.*, C.A. No. 11-1026 (RGA)) at 6–8.

Similarly, IpLearn's concern as to whether a student could be a customer was also previously considered and discussed by the Court. The Court's Order is clear that a student would be covered only when he or she is a "current or potential employee or customer of an institute user . . ." rather than "a student in the traditional sense of the term, as in a student of a school." *Id.* IpLearn's request for "clarification" improperly attempts to expand the Court's construction further to include "students who take classes from a school," a position already rejected by the Court. *See id.*

IpLearn's argument concerning the "inexpensive" limitation has also been previously argued and rejected by the Court. *See* Joint Claim Construction Brief (D.I. 89, *IpLearn LLC v. K12 Inc.*, C.A. No. 11-1026 (RGA)) at 11–12, Exhibit 9 at 13 (setting out IpLearn's argument concerning whether "inexpensively" is a limitation); Ex. C, September 30, 2013 *Markman* Hearing Tr. at 94–95, (same); Memorandum Opinion (D.I. 117, *IpLearn LLC v. K12 Inc.*, C.A. No. 11-1026 (RGA)) at 7 (explaining that "[t]o construe the claims to read out the inexpensive concept would result in the claims being broader than what the patentees describe as their invention"). IpLearn's claim that it is necessary to add "or for free" to the existing construction is unavailing, as being "free" would necessarily be encompassed by being "inexpensive."

IpLearn has not claimed that the Court committed clear error resulting in injustice. Nor could IpLearn make such a claim. All of the evidence cited by IpLearn in its letter was presented to the Court during the claim construction hearing. *See* Memorandum Opinion (D.I. 117, *IpLearn LLC v. K12 Inc.*, C.A. No. 11-1026 (RGA)) at 6–8. The legal principals relied upon by IpLearn were similarly before the Court. *See id.* at 1–3 (discussing *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)) and 9 (confirming that the Court "will not import limitations from specific embodiments into the claims"). IpLearn has not shown that the Court misunderstood or otherwise misapplied the law. Rather, what IpLearn provides amounts to a disagreement with the Court concerning the construction of a term. Such a disagreement is not sufficient to justify reconsideration or modification of the Court's construction. *See Flash Seats*, 2011 WL 4501320, at *4–*5 (no clear error has occurred when the Court has already considered the legal principles and available evidence but interpreted the evidence differently than the parties); *MobileMedia Ideas*, 2013 WL 4764037, at *3 (same).

In addition, while IpLearn's arguments have been previously addressed, to the extent IpLearn has provided new case citations and new examples from the patent specification, such evidence is insufficient to warrant reconsideration or modification of the claim construction order. IpLearn's citations are to case law and specification excerpts that existed well before the *Markman* hearing, and could have been presented at that time. *See Ampex*, 2006 WL 3359660, at *1–*2. Similarly, the Court did not present any grounds for the construction of "learning user" in its Order that had not already been addressed by the parties. Thus, even if IpLearn has provided some additional information, IpLearn "has not submitted an appropriate ground for reconsideration, because it was on notice of [the] issues and had an opportunity to respond" at the time of the *Markman* briefing and hearing. *Id.*

Consequently, the Court should not reconsider or modify its construction of "learning user."

### C. The Court's Construction of "Learning User" Is Correct

Even considering IpLearn's arguments, the Court's "learning user" construction is correct and should not be disturbed. IpLearn's claim that the patentees acted as their own lexicographers is true. Indeed, IpLearn's evidence that the patentees intended a learning user to "access learning materials" is reflected already in the Court's construction of a "current or potential employee or customer of an institute user who uses the system/method to *access learning materials* inexpensively." Memorandum Opinion (D.I. 117, *IpLearn LLC v. K12 Inc.*, C.A. No. 11-1026 (RGA)) at 6 (emphasis added). There is no serious dispute that an integral characteristic of a learning user is that the learning user "accesses learning materials." However, this accessing of learning materials does not preclude the learning user from also being limited to a "current or potential employee or customer of an institute user." Indeed, the '478 patent repeatedly explains that a learning user is a current or potential employee or customer of the institute user, showing that the patentees acted as their own lexicographer with respect to this aspect as well:

- "It should be apparent that there is a need to automatically provide appropriate learning materials in an inexpensive and easily accessible manner *to employees*, while providing information *about potential employees to employers*." Ex. D, '478 Patent, col. 2:3–7 (emphasis added).

- "The present invention provides computer-aided learning methods and apparatus that encourage *employees to learn appropriate learning materials* . . . while allow[ing] *employers* to access information on *potential employees*." Ex. D, '478 Patent, col. 2:10–14 (emphasis added).

- "In view of the above observations and insights, the invented methods and apparatus provide inexpensive computer-aided learning materials to users to work on. *Such users can be known as learning users* . . . . The costs of the learning materials and the services providing them are predominantly paid for by *employers or institute users*. In return, the present invention allows institute users to access information regarding the learning users. The information can help institute users *recruit the right people for their job openings, such as based on information from the learning activities of potential employees.*" Ex. D, '478 Patent, col. 2:63–3:9 (emphasis added).

The Court correctly recognized this, explaining that the "patents continually discuss the invention in relation to a commercial setting" and acknowledging that "[a]ll other discussions of the identity of the learning user imply that there is a business relationship between the learning user and the institute user." Memorandum Opinion (D.I. 117, *IpLearn LLC v. K12 Inc.*, C.A. No. 11-1026 (RGA)) at 7. Even IpLearn's concern that Figure 3 depicts a school was discussed and

considered by the Court, *see id.*, and further does not raise an inconsistency with the Court's construction as explained during the claim construction hearing. Ex. C, September 30, 2013 *Markman* Hearing Tr. at 98–99 ("As we can all appreciate, schools are also employers. . . . And, so, this particular embodiment that's reflected in Figure 3 of the '478 patent is in no way read out by [the construction]."). IpLearn's argument that the Court's construction improperly imports limitations of a particular embodiment described in the specification is unavailing. Contrary to IpLearn's assertions, the Court's construction does not limit the patent claims to only specific embodiments described in the specifications. *Contra Thorner v. Sony Comp. Entm't Am. LLC*, 669 F.3d 1362, 1367–68 (Fed. Cir. 2012) (rejecting claim construction that improperly limited term to two specific embodiments); *Phillips*, 415 F.3d. at 1323–24 (rejecting limiting term construction to single disclosed embodiment, but also acknowledging that embodiments help describe claim scope). Rather, the Court has correctly read the claim term in light of the specification and construed it based on that understanding. *See Phillips*, 415 F.3d at 1315; *Merck & Co. v. Teva Pharm. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83, 1585 (Fed. Cir. 1996*)*; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

IpLearn's request for "clarification" regarding the learning user term is merely an attempt to expand the scope of the claim term "learning user," despite the Court's already proper construction, and should be denied. Whether a student in a particular instance qualifies as a "customer" is a question of fact related to infringement, not an issue of claim construction. Rather than providing meaningful context, IpLearn's "request for clarification" and citation to K12's information constitutes an improper attempt to "prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product or process."[6] *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326 (Fed. Cir. 2006); *see also Thorner*, 669 F.3d at 1369 (explaining that for the claim limitation "flexible pad," the "degree of flexibility, the degree of rigidity that amounts to 'semi-rigid,' is part of the infringement analysis, not part of claim construction.").

Finally, IpLearn's concern regarding the inexpensive limitation is also unwarranted. As has been extensively briefed and discussed, access that is provided with significantly less expense or without cost would qualify as inexpensive. *See, e.g.*, Memorandum Opinion (D.I. 117, *IpLearn LLC v. K12 Inc.*, C.A. No. 11-1026 (RGA)) at 6–7; Joint Claim Construction Brief (D.I. 89, *IpLearn LLC v. K12 Inc.*, C.A. No. 11-1026 (RGA)) at 6–12; Ex. C, September 30,

---

[6] This statement is not a concession by K12 that the products and services cited by IpLearn are infringing or even accused of infringement. In fact, the document cited by IpLearn discusses products and services that IpLearn has not accused in *IpLearn LLC v. K12 Inc.*, C.A. No. 11-1026 (RGA) and includes products that do not involve any online learning component.

2013 *Markman* Hearing Tr. at 94–97.  Consequently, no modification of the claim construction order is necessary.

      Accordingly, because there is no reason to reconsider the Court's construction of "learning user," and, moreover, the Court's construction is correct, IpLearn's attempt to reargue and modify the construction of the term "learning user" should be denied.  Furthermore, as stated above, there is no possible coherent interpretation of "the user" in the asserted claims, and IpLearn's attempt to offer one illustrates how truly ambiguous the claim language is.  Accordingly, the Court should rule claims 8, 28, 66, and 74 invalid as indefinite.

      Sincerely,

| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
| */s/ Michael J. Flynn* | */s/ Stephen J. Kraftschik* |
| Jack B. Blumenfeld (#1014) | Mary B. Graham (#2256) |
| Michael J. Flynn (#5333) | Stephen J. Kraftschik (#5623) |
| 1201 North Market Street | 1201 N. Market Street |
| P.O. Box 1347 | P.O. Box 1347 |
| Wilmington, DE 19899 | Wilmington, DE 19899-1347 |
| (302) 658-9200 | (302) 658-9200 |
| jblumenfeld@mnat.com | mgraham@mnat.com |
| mflynn@mnat.com | skraftschik@mnat.com |
| *Attorneys for Defendant K12 Inc.* | *Attorneys for Defendant Oracle Corporation* |

| | |
|---|---|
| GREENBERG TRAURIG, LLP | POTTER ANDERSON & CORROON LLP |
| */s/ Eve H. Ormerod* | */s/ Philip A. Rovner* |
| _____ | _____ |
| Gregory E. Stuhlman (#4765) | Philip A. Rovner (#3215) |
| Eve H. Ormerod (#5369) | Jonathan A. Choa (#5319) |
| The Nemours Building | Hercules Plaza |
| 1007 North Orange Street | P.O. Box 951 |
| Wilmington, DE 19801 | Wilmington, De 19899 |
| (302) 661-7000 | (302) 984-6000 |
| stuhlmang@gtlaw.com | provner@potteranderson.com |
| ormerode@gtlaw.com | jchoa@potteranderson.com |
| *Attorneys for Defendant Blackboard Inc.* | *Attorneys for Defendant The Ultimate Software Group, Inc.* |