IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **IpLearn, LLC,** | |
| Plaintiff; | |
| v. | Civil Action No. 11-825-RGA |
| **Kenexa Corporation, et al.,** | |
| Defendants. | |
| **IpLearn, LLC,** | |
| Plaintiff; | |
| v. | Civil Action No. 11-876-RGA |
| **Blackboard, Inc.,** | |
| Defendant. | |
| **IpLearn, LLC,** | |
| Plaintiff; | |
| v. | Civil Action No. 11-1026-RGA |
| **K12, Inc.,** | |
| Defendant. | |

MEMORANDUM OPINION

Ryan P. Newell, Esq., Connolly Gallagher LLP, Wilmington, DE; Marc A. Fenster, Esq. (argued), Russ August & Kabat, Los Angeles, CA; Benjamin T. Wang, Esq. (argued), Russ August & Kabat, Los Angeles, CA, attorneys for Plaintiff IpLearn, LLC.

Mary B. Graham, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Mark D. Selwyn, Esq. (argued), WilmerHale, Palo Alto, CA; Andrew B. Grossman, Esq., WilmerHale, Los Angeles, CA; Peter O'Rourke, Esq., Oracle Corporation, Redwood Shores, CA, attorneys for Defendant Oracle Corporation.

Eve H. Ormerod, Esq., Greenberg Traurig, LLP, Wilmington, DE; Joshua L. Raskin, Esq. (argued), Greenberg Traurig, LLP, New York, NY; Allan A. Kassenoff, Esq. (argued), Greenberg Traurig, LLP, New York, NY; Scott J. Bornstein, Esq., Greenberg Traurig, LLP, New York, NY;

Julie P. Bookbinder, Esq. (argued), Greenberg Traurig, LLP, New York, NY, attorneys for Defendant Blackboard, Inc.

Phillip A. Rovner, Esq., Potter Anderson Corroon LLP, Wilmington, DE, attorney for Defendant Ultimate Software Group Inc.

February $\underline{10}$ , 2014

ANDREWS, U.S. District Judge:

Pending before this Court is the issue of claim construction of various disputed terms found in U.S. Patent No. 6,126,448, U.S. Patent No. 6,213,780, U.S. Patent No. 6,685,478, U.S. Patent No. 6,398,556, U.S. Patent No. 6,688,888, and U.S. Patent No. RE 38,432.

## I. BACKGROUND

On September 15, 2011, IpLearn, LLC ("Plaintiff") filed a patent infringement action (No. 11-825 D.I. 1) against Oracle Corporation, The Ultimate Software Group Inc., and other defendants who are no longer parties to this action. Plaintiff also filed suit against Blackboard, Inc. on September 27, 2011 (No. 11-876 D.I. 1) and against K12, Inc. on October 26, 2011 (No. 11-1026 D.I. 1). The Court has considered the Parties' Amended Joint Claim Construction Briefs (No. 11-825 D.I. 363, No. 11-876 D.I. 101, No. 11-1026 D.I. 89). The Court held oral argument on a portion of the disputed claim terms on September 30, 2013. (No. 11-825 D.I. 388, No. 11-876 D.I. 106, No. 11-1026 D.I. 105). A second day of oral argument was held on October 24, 2013. (No. 11-825 D.I. 413, No. 11-876 D.I. 114, No. 11-1026 D.I. 118).

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324). When construing patent claims, a matter of law, a court considers the literal language of

1

the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotations and citations omitted).

Furthermore, "the words of a claim are generally given their ordinary and customary meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e. as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. (internal citations omitted).

A court may consider extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises," in order to assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art and how the invention works. *Id.* at 1317-19 (internal quotation marks and citations omitted). However, extrinsic evidence is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

Finally, "[a] claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa'*

2

*per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

## III. CONSTRUCTION OF DISPUTED TERMS

A. *"company documents"*

1. *Plaintiff's proposed construction*: plain and ordinary meaning.
2. *Defendants' proposed construction*: "documents used by employees to perform a job in the company."
3. *Court's Construction*: "documents in the possession of the company."

The Plaintiff argues that the phrase should not be construed because its meaning is plain. (No. 11-825 D.I. 363 at 4). Defendants argue that the term should be limited to those documents used to perform a job in the company, as the specification describes documents such as "letters written...by the company's secretaries" ('448 at 7:39-44), "the template...for the company's annual report" ('448 at 7:54-57), and "a design of a building" ('448 at 8:35-38). Because these documents may be used by employees to perform a job, Defendants argue that the term should be limited to this construction (No. 11-825 D.I. 363 at 5).

The Court sees no reason to limit the term "company documents" to such a narrow construction. There is nothing in the claims that requires any limitation. While employees indeed tend to use company documents to perform their jobs, company documents could also include training materials, third-party materials, and other materials. Accordingly, the Court's construction adheres to the plain meaning, which is "documents in the possession of the company."

3

B. *"searching at least some of the documents" / "at least some of the documents are searched"*

1. *Plaintiff's construction*: plain and ordinary meaning.

2. *Defendants' construction*: "querying a database of company documents / a database of company documents is queried."

3. *Court's construction*: plain and ordinary meaning.

The Plaintiff argues that the phrase should not be construed because its meaning is plain. (No. 11-825 D.I. 363 at 10). Defendants argue that their construction is consistent with the only embodiment described in the specification. (No. 11-825 D.I. 363 at 11). Because it is clear from the specification and the Court's previous claim constructions that the search is performed by a computer, the Court sees no need to replace the language of the claims. Substituting the term "querying" for "searching" will not help the jury. Furthermore, documents need not exist in a database, as the specification describes an embodiment where "the apparatus can access through a network the learning materials" ('448 at 7:21-23), as an alternative to the learning database embodiment.

C. *"institute user pays to access materials regarding the at least one learning user" / "pays to access materials"*

1. *Plaintiff's construction*: "an organization or a person within an organization, which has an interest in information relating to at least one individual user, pays a fee to access personal material regarding the at least one individual user."

2. *Defendants' construction*: "an organization pays a fee specifically for access to personal material regarding at least one individual user."

4

3. *Court's construction*: "pays a fee to access personal material regarding the at least one learning user."

Plaintiff argues that the Court should adopt the *Saba* court's construction. (No. 11-876 D.I. 101 at 70). Defendants argue that the construction should also include a limitation that the payment is "specifically" for access to personal materials because the intent of the patent is for institute users to get access to personal information. *Id.* At the outset, the Court notes that the terms "institute user" and "learning user" have been previously construed as "an organization or a representative of an organization that has an interest in accessing information relating to a learning user" (No. 11-825 D.I. 409 at 8), and a "current or potential employee or customer of an institute user who uses the system/method to access learning materials inexpensively."[1] (No. 11-825 D.I. 409 at 6). Therefore, the term being construed here is "pays to access materials regarding the at least one learning user."[2]

While the Court understands Defendants' argument, and indeed it appears that the intent of the patent is to provide access to personal information, limiting the payments made "specifically" to "access" the personal information would improperly import the specification into the claims. The institute user must "pay[] to access materials regarding the at least one learning user" and is "permit[ed]...to access materials regarding at least one learning user." (Claim 8 of '556). While the claim implies that the subjective intent of the institute user is to access personal materials, the claim is not that limiting. A payment may give the right of access. The right of access may or may

---

[1] The Plaintiff has asked the Court to reconstrue this term to include students as learning users. (No. 11-1026 D.I. 120). I deny this request for reconsideration, and reaffirm my reasoning for not including a student as a learning user. The patent only uses the term "student" in Figure 3 and the discussion of that figure. ('478 patent 4:30-34). However, I will amend my construction to make clear that "inexpensively" also encompasses "free." Both sides agree to this point. (No. 11-825 D.I. 416 & 420). I therefore construe "learning user" as a "current or potential employee or customer of an institute user who uses the system/method to access learning materials inexpensively or for free."
[2] While the Court has also previously construed "learning user," *see* No. 11-825 D.I. 409 at 6, the term is better understood with the phrase "learning user" included.

5

not be exercised. Or the payment may give rights to multiple things, only one of which is access. Therefore, the payment need not be "specifically" for accessing personal materials.

D. *"ascertaining materials for a learning user to learn"*

1. *Plaintiff's construction*: plain and ordinary meaning.

2. *Defendants' construction*: "applying a set of rules to identify and select a set of learning materials for a learning user."

3. *Court's construction*: "identifying and selecting a set of learning materials for a learning user."

The issue here is whether the ascertaining step requires applying a set of rules. Plaintiff contends that this is not the case because the determination can be based solely on the learning objective rather than a set of rules. (No. 11-825 D.I. 363 at 23). Defendants reply that in order to determine the learning objective, the ascertainer must first apply a set of rules. (No. 11-825 D.I. 363 at 24).

There seems to be no doubt that at some point the ascertainer will apply a set of rules. But in the immediate step of selecting the learning materials, this need not occur. For example, the ascertainer may, "based on words such as write and fictions, search[] the learning material storage medium...for learning materials whose titles have the same two key words." ('556 at 6:5-10). While this step might occur via applying rules, the patent does not describe it as such, and therefore the Court will not require "applying rules" every time the ascertainer "ascertains materials for a learning user to learn."

E. *"the user"*

1. *Plaintiff's construction*: plain and ordinary meaning.

6

   2. *Defendants' construction*: indefinite.

   3. *Court's construction*: either a learning user or an institute user

Defendant argues that this term is insolubly ambiguous and is not amenable to construction.

At oral argument, the Court requested that Plaintiff rebut the indefiniteness argument via letter

brief. (D.I. 416 and 420). After considering these arguments (No.11-1026 D.I. 120 and 123), I hold

that "the user" is not indefinite. The term clearly refers to either an institute user or a learning user.

While the claim is difficult to parse based on this option, its meaning can be deciphered. For

discussion purposes, I will refer to claim 8 of the '556 patent.[3] Steps a, c, and d all refer to "the

user." Therefore, "the user" in those steps must be consistent throughout a reading of the claim. It

is either a learning user or an institute user. Steps b, e, and k limit "the user" to either a learning

user or an institute user. The following is an example of claim 8 where I have substituted "learning

or institute user" for "user," unless the claims specify a narrower construction, as in steps b, e, and

k. As interpreted, claim 8 reads:

> A computer aided learning method for a <u>learning or an institute</u> user comprising the steps of:
>
> [a] retrieving, by a first computer, materials related to the <u>learning or institute</u> user;
>
> [b] permitting, by the computer, the <u>institute</u> user<u>, as determined based on an identifier of the learning or institute user,</u> to access materials regarding at least one learning user ~~if the user is an institute user, as determined based on an identifier of the user~~;
>
> [c] tracking, by the computer, materials regarding the <u>learning or institute</u> user; and
>
> [d] updating, by the computer, materials regarding the <u>learning or institute</u> user based on the tracked materials,
>
> [e] wherein ~~if the user is the institute user,~~ the institute user can learn about the at least one learning user in an area the institute user is interested;

---

[3] The parties agree that this claim is representative. (No. 11-825 D.I. 363 at 24).

[f] wherein the materials accessed can be retrieved by at least one of ~~the users~~ either the learning user or the institute user from another computer, which is connected to the first computer through a network;

[g] wherein the institute user pays to access materials regarding the at least one learning user;

[h] a learning user is allowed to access materials on a subject to learn and to work on, to perform a task; and

[i] materials on at least one of ~~the users~~ either a learning user or an institute user can be tracked and updated;

[j] wherein the method further comprises ascertaining materials for a learning user to learn based on an attribute of the learning user;

[k] wherein ~~if the user is a learning user~~, the step of tracking includes tracking ~~the~~ said learning user's learning activities; wherein the learning user is learning features of a product and the activities tracked include the one or more features the user worked on; and

[l] wherein the method is implemented at a Web site.

Clearly "the user" is wrought with confusion.[4] But the confusion does not rise to the level of

insoluble ambiguity. Read in the context of the claims and the specification, "the user" is amenable

to construction.

    F. *"dialogue session"*

        1. *Plaintiff's construction*: "a duration of time for the users to communicate in a

           dialogue environment."

        2. *Defendants' construction*: "a duration of time for the users to communicate in a

           dialogue environment that is terminated automatically."

        3. *Court's construction*: "a duration of time for the users to communicate in a

           dialogue environment."

---

[4] Even Plaintiff does not have a handle on this term, as its arguments have morphed since the briefing, both at oral argument and in its subsequent submission. (No. 11-825 D.I. 420).

The dispute over this term is whether the dialogue session terminates automatically. Plaintiff argues that the abstract and the plain and ordinary meaning make clear that the session does not terminate automatically. (No. 11-876 D.I. 101 at 52). Defendants argue that the specification makes clear that the dialogue session is terminated automatically. (No. 11-876 D.I. 101 at 54). In reply, Plaintiff points out that while the dialogue session is capable of automatically ending, in some embodiments the user may terminate the session. (No. 11-876 D.I. 101 at 55).

The Court agrees with Plaintiff. While the dialogue session is of a fixed duration of time, it need not be terminated automatically. In certain embodiments, the user may terminate the dialogue session, something which would not be encompassed by Defendants' proposed construction.

G. *"retrieving/retrieved/retrieves" / "generating/generated/generates"*

      1. *Plaintiff's construction*: plain and ordinary.

      2. *Defendants' construction*: "retrieving by the system" / "created by the system."

      3. *Court's construction*: "retrieving by the system" / "generated by the system."

The Plaintiff argues that the phrase should not be construed because its meaning is plain. (No. 11-876 D.I. 101 at 14). Defendants argue that generating and retrieving must be performed entirely by the system. (No. 11-876 D.I. 101 at 15). Defendants' proposed construction is consistent with the Court's previous construction of "computer-aided/computer implemented," whereby the system must perform the steps of the method. *See* No. 11-825 D.I. 409 at 3. However, the Court sees no reason to rewrite the term to replace "generate" with "create." "Create" seems to narrow "generate" for no good reason.

H. *"user/users"*

      1. *Plaintiff's construction*: plain and ordinary meaning.

      2. *Defendants' construction*: "student/students."

      3. *Court's construction*: "student/students."

During oral argument, the parties agreed to the Court's construction, but only for the

specific claims for which the term is at issue. (No. 11-825 D.I. 413 at 122).

I.   *"line-item"*

      1. *Plaintiff's construction*: "a subdivision of a subject."

      2. *Defendants' construction*: "in an educational system which assesses a student's

         level of understanding of a subject and in which the subject is divided into a

         hierarchy of complexity, a 'line item' is a subdivision of the subject, with at least

         one line item being more difficult than another line item."

      3. *Court's construction*: "a subdivision of a subject."

The parties agree that the Court should adopt the *Saba* court's construction of this term

with respect to the '486 patent. (No. 11-876 D.I. 101 at 26). However, Plaintiff argues that the

*Saba* court's construction should not apply to the '208 and '358 patents because they are part of a

separate patent family, and the "fact that the same term appears in another patent does not mean

that it has the same meaning or claim interpretation in both patents." (No. 11-876 D.I. 101 at 26).

Defendants argue that the Court should apply the *Saba* court's construction because that

construction is supported by the intrinsic record. (No. 11-876 D.I. 101 at 28).

As for whether the Court should adopt the *Saba* court's construction, the Court agrees with

Plaintiff that the patents are different and that the construction should not be adopted without an

independent determination. Defendants' proposed construction is improperly limiting, as it does

not encompass embodiments which do not include a hierarchy of complexity. Therefore, the Court

10

adopts Plaintiff's proposed claim construction.

J.   *"inference engine"*

1.   *Plaintiff's construction*: "hardware, software, or some mix of hardware and software, that accesses relationship rules to determine a student's level of understanding in a subject or line item."

2.   *Defendants' construction*: "computer hardware/software that accesses and applies the relationship rules in order to determine the student's level of understanding in a subject and to generate recommendations."

3.   *Court's construction*: "hardware, software, or some mix of hardware and software, that accesses relationship rules to determine a student's level of understanding in a subject or line item."

The primary disagreement over this term is whether the inference engine must generate recommendations. (No. 11-876 D.I. 101 at 42). Plaintiff points out that claim 41 of the '486 patent does not require that the inference engine generates a recommendation whereas claim 42 requires the generation of a recommendation. (No. 11-876 D.I. 101 at 41). Plaintiff argues that if the inference engine had to generate a recommendation, then claim 42 would be redundant insofar as the claim includes language which requires that the engine generates a recommendation. Defendant argues that the patent repeatedly refers to the inference engine making a recommendation. (No. 11-876 D.I. 101 at 42).

Defendants' arguments are not persuasive. In discussing the inference engine, the patent repeatedly states that the engine "**can** generate recommendations." *See* '486 at Abstract, 2:34-36 (emphasis added). The specification does not require that the inference engine generate a

11

recommendation in every instance, and to incorporate that limitation in the claim construction would be improper.

K. *"relationship rules"*

1. *Plaintiff's construction*: "a subset of analysis rules that define the relationship between or among areas of a subject."

2. *Defendants' construction*: "rules that define the relationship among the line-items, the minor-topics, the major-topics and the subject and that aid in determining the student's understanding in the subject."

3. *Court's construction*: "rules that define the relationship between or among areas of a subject."

At oral argument, it became clear that the main point of dispute over this term is whether relationship rules apply only horizontally, i.e. they define the relationship among line-items, but do not define the relationship between a line-item and a major topic, as Defendant asserts, or whether they may apply vertically as well, i.e., between a line-item and a major topic, as Plaintiff asserts. (No. 11-825 D.I. 413 at 116).

Defendants' argument is not persuasive.[5] The patent teaches that relationship rules "define the relationship among different areas in the subject, such as the relationship among the line-items, the minor-topics, the major-topics and the subject." ('486 at 6:55-60). This definition does not limit the relationship rules to horizontal relationships among a single area of the subject. For example, the specification describes that relationship rules may determine "(1) the grade in each

---

[5] As to the "aid in determining the student's understanding in the subject," it is true that in claim 41 of the '486 patent the inference engine applies the relationship rules to "determin[e] the student's level of understanding." That, however, is merely one function to which the relationship rules can be put. Even assuming that it were proper to add functional limitations to the construction of relationship rules, there is nothing in the intrinsic record that requires that relationship rules perform this function. It is, at most, one embodiment.

line-item of a minor-topic before one is considered strong in that minor-topic; (2) the grade in each minor-topic of a major-topic before one is considered strong in that major-topic; and (3) the grades in each major-topic of the subject before one is considered strong in that subject." ('486 at 7:22-28). In order to make these determinations the relationship rules must be applied vertically, not just horizontally. Therefore, the Court adopts Plaintiff's proposed construction, but omits as unnecessary the phrase "a subset of analysis."

    L.   *"recommendation"*

        1. *Plaintiff's construction*: plain and ordinary meaning.

        2. *Defendants' construction*: "the next one or more line-items for the student as determined by the inference engine based upon the student's test results."

        3. *Court's construction*: plain and ordinary meaning.

    The Plaintiff argues that the phrase should not be construed because its meaning is plain. (No. 11-876 D.I. 101 at 45). Defendants argue that their proposed construction is supported by the intrinsic record. (No. 11-876 D.I. 101 at 46). While Defendants' proposed construction is accurate for an embodiment of the invention, in other embodiments, recommendations are not limited to "the next one or more line-items."[6] Defendants provide no reason in the intrinsic record why "recommendation" should be limited. Therefore, the Court gives the term "recommendation" its plain and ordinary meaning.

    M.   *"reviews"*

        1. *Plaintiff's construction*: plain and ordinary meaning.

        2. *Defendants' construction*: "materials specifically tailored for a particular student that have been generated by a computer for the renewed study of a previously

---

[6] *See* '486 patent, 17:64-65 (the recommendation can be "the area in the subject that the student is weak.").

13

learned subject."

3. *Court's construction*: "review of the summarized learning materials."

The Plaintiff argues that the phrase should not be construed because its meaning is plain. (No. 11-876 D.I. 101 at 19). Defendants argue that reviews must be specifically generated for an individual student. (No. 11-876 D.I. 101 at 19). Defendants' argument is unpersuasive because the patent states that reviews "are specifically tailored to the needs of individual students, or the characteristics of the subject." ('208 at 1:64-65). This is different from the reviews being "specifically tailored for a particular student." Defendants agree that different students might receive the same reviews. (No. 11-825 D.I. 413 at 116).

However, the plain and ordinary meaning is not sufficient. The term is used in claim 1 of the '208 patent and claim 1 of the '358 patent. In both claims, the claims themselves shows that the term "reviews" refers to review of the summarized learning materials. Therefore the Court's construction of "reviews" is "review of the summarized learning materials."

N. *"learnt line-item"*

1. *Plaintiff's construction*: plain and ordinary meaning.

2. *Defendants' construction*: "a line-item for which the student has reached or exceeded a preset level."

3. *Court's construction*: "a line-item for which the student has achieved a preset level in learning that line item."

The Plaintiff argues that the phrase should not be construed because its meaning is plain. (No. 11-876 D.I. 101 at 32). Defendants' proposed construction is taken from claim 1 of the '208 patent. (No. 11-876 D.I. 101 at 32). Plaintiff's argument that the meaning is plain is not persuasive.

14

Line-items are terms which are used in a particular way in the patent, and therefore construction would be helpful to the jury. The Court's construction therefore uses the definition directly from the patent.

O. *"learnt line-item selection rules" / "line-item selection rules"*

1. *Plaintiff's construction*: plain and ordinary meaning.

2. *Defendants' construction*: "rules that govern which [learnt] line-item is selected by the computer based upon a one or more of the following factors: the time elapsed from the time when the student learnt that line-item, the level achieved by the student in learning that line-item, its difficulty level, whether that learnt line-item is related to the selected un-learnt line-item, and whether that learnt line-item has been selected before."

3. *Court's construction*: "rules that govern which [learnt] line-item is selected by the computer."

The Plaintiff argues that the phrase should not be construed because its meaning is plain. (No. 11-876 D.I. 101 at 38). Defendants' proposed construction is taken verbatim from the specification. (No. 11-876 D.I. 101 at 38-39). As with "learnt line-item," the Court does not agree that the meaning of this term is plain. However, Defendants' definition is unduly long, and does not acknowledge the "such as" nature of the listed factors, *see* '208 patent at 2:8-14, and therefore the Court adopts only the first portion of the construction.

P. *"summarized learning materials"*

1. *Plaintiff's construction*: plain and ordinary meaning.

2. *Defendants' construction*: "learning materials specifically tailored for a particular

15

> student for the student's review of material classified by the computer as a learnt
> line-item."

3. *Court's construction*: plain and ordinary meaning.

The Plaintiff argues that the phrase should not be construed because its meaning is plain. (No. 11-876 D.I. 101 at 48). Defendants argue that the "summarized learning materials" are specifically tailored for a particular student. (No. 11-876 D.I. 101 at 48). Defendants' argument implies that the selective generation of materials is equivalent to "specifically tailored." (No. 11-876 D.I. 101 at 49). This argument is not persuasive. The specification clearly states that summarized learning materials may be "catered specifically to the needs of individual students or the characteristics of the subject." ('208 patent at 1:48-53). Therefore, the Court adopts the plain and ordinary meaning of "summarized learning materials."

## IV. CONCLUSION

Within five days the parties should submit a proposed order, consistent with this opinion, suitable for submission to the jury.

16